CUDAHY PACKING COMPANY, Respondent, v. ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, May 1, 1916.

1. **COMMON CARRIERS: Interstate Commerce: Carmack Amendment: Common-law Liability.** In a suit brought by a shipper of perishable products against the initial carrier of an interstate shipment, for damage arising from fresh meat spoiling while in transit, the petition need not allege negligence upon the part of the carrier but may sue the initial carrier upon its common-law liability as an insurer since the Carmack Amendment to the Hepburn Act imposed upon the initial carrier the same liability which the common law imposed upon carriers generally.

2. ——: ——: ——: The common-law rule of liability was not limited to negligence but went beyond that and made the carrier liable for any loss or damage not the act of God or the public enemy. In course of time another exception was added, namely, where the property transported became damaged by reason of its own vice or inherent infirmity, and without fault on the part of the carrier. In such case also the latter was not liable.

Cudahy Packing Co. v. A. T. & S. F. Ry. Co.

3. ———: ———: ———: ———: Even in the case of a shipment of fresh meat, which is of a highly perishable nature, and where the shipment is in the shipper's car and he does his own original icing, loading, inspection, closing and sealing of the car, and the carrier has no opportunity to inspect the meat and nothing to do with the inside of the car, except to follow icing directions which can be done from the outside without opening or disturbing that part of the car where the meat is, the mere pleading of a delivery to the carrier, in good condition and properly packed, and the delivery by it after transportation in a damaged condition, is sufficient to state a case against the carrier because the reasons for holding the carrier to its strict common-law liability in such a case are as strong as in any other case of an unaccompanied shipment where the means of knowing what has happened to the property in transit are all in the possession of the carrier.  There might be cases where a shipment would be for such a great distance, covering such a length of time as that, from the known tendency of meat to spoil in that time, no presumpion of fault on the part of the carrier would arise from the mere fact that it spoiled in the time necessarily occupied in the journey, but the present case presents no such features.

4. ———: ———: ———: ———: Burden of Proof.  In the case of a shipment of the kind here in question, although the burden is on defendant to show that the loss arose through one of the causes from which a carrier is exempt as an insurer, yet the plaintiff had the prior burden of showing that it delivered the meat in good condition properly prepared for shipment.  While the burden is on defendant to show non-liability as an insurer, yet that burden does not arise until after the shipper has, by proof, established the facts necessary to create that burden.

5. ———: ———: ———: ———: ———: In this case the meat was shipped in plaintiff's own cars.  They were loaded, iced, and sealed by plaintiff and delivered for shipment as a sealed car and defendant had nothing to do with the inside thereof. The bill of lading contained no admission on the part of defendant that the meat was in good condition, properly iced and packed for shipment.  These facts were denied in the answer.  Hence the court could not give a peremptory instruction to find for plaintiff since this would be telling the jury they must believe plaintiff's evidence that the meat was in good condition and properly packed.

6. ———: ———: ———: ———: ———: Evidence: Jury Question.  This was a shipment of perishable products in a sealed car of plaintiff's own make and choosing, with the inside of which defendant had nothing to do except to follow icing instructions.  The defendant, as a common carrier, did not

insure against the meat spoiling from its inherent tendency to decay, not influenced, affected or brought about in any way by any failure of defendant to perform its public duty, and, therefore, it should be permitted to lay before the jury any competent evidence which would tend to show that the meat spoiled solely because of its own tendency. The defendant is not required to prove this by evidence of an express and positive character directly to that effect. It may be shown by circumstantial evidence which tends to eliminate every possible cause but that. And where there is evidence tending to show that the meat spoiled from its own tendency, either direct evidence to that effect or circumstantial evidence which tends to eliminate every other cause, it is for the jury to say whether the defendant should be held liable or not.

7. ——: ——: ——: ——: ——: —— : ——:
Shipping Instructions. It being conceded that the meat was shipped in plaintiff's own cars, that they were inspected, iced, loaded, closed and sealed by plaintiff; that the cars moved forward without delay and went forward to destination with seals unbroken, the decay of the meat must have arisen either because defendant failed to follow icing instructions or because of the meats inherent tendency to decay. If the meat decayed from the former cause the defendant would be liable; if it decayed from the latter cause the defendant would not be liable. If the defendant introduced testimony tending to show that it followed icing instructions strictly and the jury believed that it did so follow them, then, since under the circumstances of this case every other reasonable cause for the decay of the meat is excluded except its natural tendency, the jury would have the right to say that the meat spoiled from the latter cause. In short, whenever the evidence is in such condition that the jury can reasonably draw the inference that the meat was not spoiled, or that, if spoiled, it was caused by plaintiff's improper packing, icing, or instructions or because of its inherent tendency, unaffected by anything in the carrier's treatment or conduct, then the question of the latter's liability is for the jury.

Appeal from Jackson Circuit Court.—*Hon. O. A. Lucas*, Judge.

REVERSED AND REMANDED.

*Lathrop, Morrow, Fox & Moore* for appellant.

*New, Miller, Camack & Winger, P. E. Reeder* and *C. E. Cooley* for respondent.

TRIMBLE, J.—The Cudahy Packing Company shipped from its packing plant in Wichita, Kansas, two carloads of fresh meat, one to its branch house in Springfield, Illinois, and the other to another of its houses in Pittston, Pennsylvania. When the cars arrived at their respective destinations, the meat was spoiled.

The Packing Company brought this suit under the Carmack Amendment to the Hepburn Act against the defendant, as the initial carrier, to recover the loss.

The meat was shipped in Cudahy Refrigerator Line Cars owned and furnished by plaintiff. They were loaded, iced and sealed by plaintiff at its packing plant and delivered to defendant for transportation under uniform bills of lading signed by both parties. These bills contained instructions, inserted by plaintiff, to re-ice the cars to full capacity at certain stations therein named, adding 12 per cent. salt, and to re-ice oftener if delayed.

The petition is in two counts, one for each car, and is based upon the common-law liability of the carrier as an insurer, no negligence being charged, it being merely alleged that the meat, loaded in said refrigerator cars fully iced and at the proper temperature, was delivered to and received by defendant in good condition, but, when delivered by the carrier at destination, was spoiled and badly damaged.

The defendant's answer pleaded, first, a general denial; second, a full compliance with plaintiff's icing instructions; and, third, that the damage, if any, to the meat was caused by its condition, or by its natural tendency to spoil and decay.

The plaintiff introduced evidence tending to show that the cars were delivered to the defendant with the meat in good condition, and that when they were received at destination the meat was slimy and spoiled. The evidence on both sides is to the effect that the cars were transported throughout the entire journey

under their original seals, which shows that the doors were not opened in transit nor the interior of the cars disturbed in any way. In fact, it was not intended that the defendant should have, nor did it have, anything whatever to do with the inside of the cars, except to re-ice them. And the instructions to re-ice the cars did not require any entrance into or disturbance of that part of the car containing the meat, since the car was so constructed that the ice receptacles could be replenished from the outside without that.

The evidence of the parties also agrees that the car for Springfield, Illinois, left Wichita, Kansas, August 19th, at 5:10 p. m. and arrived at Springfield, August 21, at 8:45 a. m., and was set at the Cudahy plant for unloading at 11 a. m. of that day. There was no delay en route of this car and the proof is that it went forward by the fastest trains.

Plaintiff's instructions in the bill of lading required the car to be re-iced at Argentine, Kansas, and Roadhouse, Illinois, and oftener if delayed, but since there was no delay, the car was not iced except at those two places. Defendant introduced evidence tending to show that the car was iced at these two points in strict accordance with plaintiff's instructions.

The evidence on both sides shows that the car destined to Pittston, Pa., left Wichita, September 11, at 4:30 p. m. and arrived at Pittston and was delivered to the Cudahy plant at that place about six o'clock in the morning of September 17th. Plaintiff's instructions in this bill of lading required the car to be re-iced at Argentine, Kansas, Fort Madison, Iowa, Blue Island, Illinois, Junction Yards, Michigan, and Manchester, Pa., and oftener if delayed. Defendant introduced evidence tending to show that the car was properly iced at all of these places, with the possible exception of Blue Island. (The proof of the icing at that place consisted of reports of the icing

foreman attached as exhibits to his deposition which was taken and filed by plaintiff but not introduced by anyone. Defendant introduced these exhibits but offered no part of the deposition to identify the reports or to show that they were correct, and the trial court excluded them as not being identified or supported by the testimony of any one.)

The car arrived in Pittston twenty-four hours late but plaintiff's manager testified that this short delay would not affect the meat if the car was properly iced and salted according to plaintiff's instructions.

At the close of all the evidence, the court, upon motion of the plaintiff, struck out all of defendant's evidence as to the icing of the cars en route and all evidence as to the cars at different points along the journey for the reason that all such facts taken together constituted no defense to plaintiff's cause of action. This covered all of defendant's defensive evidence; and, in addition to striking it out, the court instructed the jury in behalf of plaintiff, to disregard all evidence introduced by defendant as to its compliance with the icing instructions and as to the manner in which the cars were iced en route.

Thereupon the court instructed the jury that they *must find for the plaintiff on both counts* of the petition, but left it to the jury to determine the amount of damages on each count.

Defendant makes the point that the petition fails to state a cause of action in that it contains no allegation of negligence. The contention is that the liability imposed upon the initial carrier by the Carmack Amendment is for damage "caused" by it or by any connecting carrier, and hence in a suit under the Amendment the plaintiff must allege negligence. But it has been held by the Supreme Court of the United States that the Amendment imposed upon the initial

carrier the same liability which the common law imposed. In other words, the common-law rule of liability was not changed by the Act. That rule was not limited to negligence, but went beyond that and made the carrier liable for any loss or damage not the act of God or the public enemy. [Adams Express Company v. Croniger, 226 U. S. 491, 1. c. 509; Collins v. Denver etc., R. Co., 181 Mo. App. 213.] The purpose of the Act was to make the first carrier liable as at common law. [Storm Lake etc. Factory v. Minneapolis etc. R. Co., 209 Fed. 895, 1. c. 903; Missouri etc. R. Co. v. Harriman, 227 U. S. 657, 1. c. 673; Kansas City etc. R. Co. v. Carl, 227 U. S. 639.]

But in course of time an exception to the carrier's common-law liability was added, namely, that if the property transported became damaged by reason of its own vice or inherent infirmity, *and without fault on the part of the carrier,* the latter was not liable. And defendant takes the position that even in a suit based upon the carrier's common-law liability as an insurer, the real basis of the carrier's liability is negligence; and since fresh meat is of a highly perishable nature and the shipment in the present case is one where the shipper does his own original icing, loading, inspection, closing and sealing of the car, and the carrier has no opportunity to inspect the meat and nothing to do with the inside of the car, the mere pleading of a delivery to the carrier in good condition and the delivery by it after transportation in a damaged condition should create no presumption of negligence because the damage is as likely to have been caused by the inherent infirmity of the meat as by any negligence of the carrier. We do not agree with the statement that the real foundation of the carrier's common-law liability is negligence because unless the loss or damage is shown to have been occasioned solely by some one of the causes which exempts the carrier from liability at common law, the carrier

was held liable regardless of the care it took. But even if defendant's contention as to the real foundation of liability in the case of perishable shipments like the one at bar be correct, still the fact that fresh meat was delivered in good condition and properly iced and was received for shipment by the carrier and was delivered by it in bad condition, would raise the presumption that something occurred to it during transit to produce that condition and, therefore, the carrier, under the common law, would be liable as an insurer, unless it sustained the burden of proof resting upon it to show that the meat deteriorated through its own infirmity. The reasons for holding the carrier to its strict common-law liability in such a case are as strong as in any other case of an unaccompanied shipment, where the means of knowing what has happened to the property in transit are all in the possession of the carrier.

Of course, there might be a case where the shipment would be for such a great distance covering such a length of time as that, from the known tendency of meat to spoil in that time, no presumption of fault on the part of the carrier would arise from the mere fact that it spoiled in the time necessarily occupied in the journey, but the petition in the case at bar presents no features of this character. It cannot be presumed that the shipper delivered bad meat to the carrier, nor that the meat spoiled of its own infirmity, in spite of all care to prevent it, in the time these shipments occupied. Under the common law, the burden is on the carrier to show that the loss or damage came within one of the well-recognized exemptions from liability, and since the burden is on it to show this, the shipper does not have to allege and prove neglect on the part of the carrier. A prima-facie case is made by showing a delivery, in good condition and properly packed, to the carrier and the subsequent delivery after

transportation in bad condition. [Collins v. Denver etc. R. Co., 181 Mo. App. 213; Stiles v. Louisville etc. R. Co., 129 Ky. 175; Lindsley v. Chicago etc. R. Co., 36 Minn. 539; Chicago etc. R. Co. v. Woodward. 164 Ind. 360; St. Louis etc. R. Co. v. Kilberry, 83 Ark. 87; Dow v. Portland Steam Packet Co., 84 Me. 490; Toledo etc. R. Co. v. Hamilton, 70 Ind. 393; Swinney v. American Express Co., 144 Iowa, 342; Railway Co. v. Wynn, 88 Tenn. 320; 6 Cyc. 376, 517, 519; Hurst v. St. Louis etc. R. Co., 117 Mo. App. 25, l. c. 36; Read v. St. Louis etc. R. Co., 60 Mo. 199; Yontz v. Missouri Pac. Ry. Co., 174 Mo. App. 482; Grier v. St. Louis etc. R. Co., 108 Mo. App. 565; Dean v. Toledo etc. R. Co., 148 Mo. App. 428.]

But it is said that plaintiff in its evidence in chief attempted to show the cause of the damage to the meat by showing that its icing instructions were not properly carried out by defendant on the journey, and thereby assumed the burden of showing negligence and will, therefore, be held to that theory on appeal. We have examined the record and find that plaintiff was not basing its cause of action upon a failure to ice or upon any negligent conduct. In proving that it delivered the meat in good condition properly packed, and iced, and that it was received in a bad condition, some evidence did develop tending to show that the cars were not properly iced en route, but it came out as a part of the conditions present in the car when delivered at destination and this evidence was offered to show delivery in bad condition, and the facts and circumstances which came out along with it, which had a tendency to show negligence, were wholly insufficient to show an election or intention on the part of plaintiff to base its cause of action on negligence. The plaintiff did not, therefore, try its case upon a theory different from that presented by its petition.

But although the burden is on defendant to show that the loss arose through one of the causes for which a shipper is exempt as an insurer, yet the plaintiff has the prior burden of showing that it delivered the meat to the defendant in good condition, properly prepared for shipment. While the burden is on defendant to establish non-liability as an insurer, yet that burden does not arise until after the shipper has, by proof, established the facts necessary to create that burden. In this case, plaintiff's petition alleged that it delivered to the carrier the meat loaded in the shipper's own cars, known as Cudahy Refrigerator Cars, and that each car, thus loaded with meat, ''was properly filled with ice and at the proper temperature and that said meat was in good, marketable condition.'' Under these allegations, it was incumbent upon plaintiff to prove these facts, and it introduced evidence to establish them. The defendant did not admit these facts but denied them. The general denial in the answer raised an issue as to them making it incumbent on plaintiff to prove them. Hence, unless the bills of lading contained a written admission on the part of the defendant that the meat was in good condition and properly iced and packed for shipment, the court could not give a peremptory instruction to find for plaintiff because this would be tantamount to telling the jury it must believe plaintiff's evidence as to the good condition and proper icing by plaintiff. It is contended that the bill of lading contains such an admission but we do not think so.

It will be borne in mind that these shipments were in plaintiff's own cars; that they were loaded, iced and sealed by plaintiff at its packing plant and delivered for shipment as a sealed car and that defendant had nothing to do with the inside thereof. The bill of lading only acknowledged receipt of the property ''in apparent good order, contents and conditions of contents of packages unknown.'' As the

evidence shows that the cars were loaded, iced and sealed by plaintiff before delivery to defendant, the bill of lading cannot be said to contain an admission that the meat was *properly iced* nor that it was in good condition itself, otherwise there is no meaning to be given to the word "apparent." Indeed, when the bills of lading were offered in evidence plaintiff disclaimed any other purpose in offering them except "for the purpose of showing receipt of the goods by the Santa Fe and for no other purpose." Neither does the certificate of the Cudahy Packing Co., placed on the bill of lading by it, that the meats had been inspected according to Act of Congress and "are sound, healthful, wholesome and fit for human food" bind the defendant. That was simply a certificate signed only by the shipper and not by the defendant, and did not relieve plaintiff of the necessity of proving that the meat was in good condition and had been properly iced for the beginning of the journey; and plaintiff, at the trial recognized this by offering evidence to establish those facts otherwise. It was error, therefore, to tell the jury that plaintiff's evidence that the meat was in good condition, properly packed, iced, and was of the right temperature when delivered to defendant.

This was a shipment in a sealed car of plaintiff's own make and choosing, and defendant had nothing to do with the inside thereof, except to follow the icing instructions. The defendant, as a common carrier, did not insure against the meat spoiling from its inherent tendency to decay, not influenced, affected, or brought about in any way by any failure of defendant to perform its public duty. Therefore, the defendant should have been permitted to lay before the jury any competent evidence which would tend to show that the meat spoiled solely because of its own tendency. The defendant is not required to prove this by evidence of an express and positive

character directly to that effect. It may be shown by circumstantial evidence which tends to eliminate every possible cause but that. And, in this case, the meat's inherent tendency to decay includes a failure on the part of plaintiff to properly pack, ice, and prepare the meat for shipment in a proper car with proper icing instructions. Because, the plaintiff having undertaken these, if the meat spoils because of the inefficiency of such things, the meat has spoiled from its inherent tendency so far as defendant's liability is concerned. Where there is evidence tending to show that the meat spoiled from its own tendency, either by direct evidence to that effect, or by circumstantial evidence which tends to eliminate every other cause but that, it is for the jury to say whether defendant should be held liable or not, because if the meat did spoil from its own tendency, unaffected by any failure of duty on the carrier's part, then, under the law, defendant did not insure against that.

There was no delay as to one of the cars, the one going to Springfield; and as to the other, although there was a delay of twenty-four hours, yet plaintiff's evidence is to the effect that this would have no effect on the meat if plaintiff's icing instructions were followed. It being conceded that the meat was shipped in plaintiff's own cars, that they were inspected, iced, loaded, closed and sealed by it, that they moved forward without any delay (that is, at least none sufficient to cause decay if instructions were obeyed), and that the cars went forward to destination with seals unbroken, it would seem that the decay of the meat arose either because the defendant failed to follow icing instructions, or because of the meat's inherent tendency to decay. If the meat decayed from the former cause the defendant would be liable; if it decayed from the latter cause, the defendant would not be liable. If the defendant intro-

duced testimony tending to show that it followed icing instructions strictly *and the jury believed that it did so follow them,* then, since under the circumstances of *this* case every other reasonable cause for the decay of the meat is excluded except its natural tendency, the jury would have the right to say that the meat spoiled from the latter cause and that the defendant was not liable. And where defendant introduces evidence which, either directly or by a process of elimination, tends to show that the decay arose through the meat's own infirmity, or to create a reasonable inference to that effect, unaffected by any failure of the carrier's public duty, then the question is for the jury to say whether the meat did or did not spoil from its own tendency. In short, whenever the evidence is in such condition that the jury can reasonably draw the inference either that the meat was not spoiled, or that, if spoiled, it was caused by plaintiff's improper packing, icing or instructions, or because of its inherent tendency, unaffected by anything in the carrier's treatment or conduct, then the question of the latter's liability is for the jury. [Funsten Fruit Co. v. Toledo etc. R. Co., 163 Mo. App. 426; Blake v. St. Joseph etc. R. Co., 159 Mo. App. 405; Thompson v. Quincy etc. R. Co., 136 Mo. App. 404.]

The evidence offered on the part of the defendant tending to show that the capacity of the ice bunkers in the Cudahy Refrigerator cars is not sufficiently large to keep the meat at the proper point of refrigeration so as to preserve it from decay should have been admitted, since it went to the question of whether the plaintiff had properly done its part in preparing the shipment and also whether the meat spoiled from this cause and not because of any fault on the part of the carrier.

The judgment is reversed and the cause is remanded. All concur.