Plaintiff, L. Frank Company, Inc., the consignee, brought this suit against the defendant, Illinois Central Railroad Company, the terminal carrier, to recover the sum of $911.40, for damages for injury to an interstate shipment of eggs. From a judgment in favor of plaintiff, defendant prosecutes this appeal.
Plaintiff alleges that during September of 1948, a carload of eggs was shipped to the plaintiff in New Orleans, by Priebe 
Sons, Inc., Chicago, Illinois; that when *Page 89 
the carload of eggs was delivered to the railroad for shipment to New Orleans, it was in excellent condition; that upon delivery in New Orleans all of the eggs were accepted by plaintiff with the exception of sixty-two cases which were damaged; that the sixty-two cases of eggs which were rejected were valued at $911.40 and plaintiff prayed for judgment in that amount.
The defendant, Illinois Central Railroad Company, answered admitting that the carload of eggs was shipped to the plaintiff, on its lines, and denying the remaining allegations of plaintiff's petition, particularly the allegation that the entire carload of eggs was in excellent condition when delivered to the initial carrier for shipment to New Orleans. Defendant further answered that the sixty-two cases of eggs which had been rejected by the plaintiff, were reworked by the railroad, that is to remove the broken eggs and replace them with good eggs removed from other cases, and fifty-six cases and twenty-seven dozen were found to be in good order and condition; that the said eggs were tendered to the plaintiff who refused them; that the defendant railroad, in order to minimize its damage, sold the eggs for "the account of whom it may concern" for a net of $510.96, which sum was tendered to the plaintiff and rejected.
The record reflects that to prove delivery of the eggs in good order and condition to the initial carrier, the plaintiff relies first, on receiving a clean bill of lading from the initial carrier and, second, by the testimony elicited from Mr. Charles L. Frank, Sr., the executive Vice-President of the plaintiff company. The bill of lading in question was issued in connection with the shipment of the eggs and is dated September 1, 1948, the principal portion of which reads as follows: "Received * * at Chicago, Illinois, September 1, 1948, from Priebe Sons, Inc. the property described below in apparent good order except as noted (contents and condition of contents of packages unknown) * *".
Mr. Frank testified that the condition of the carload of eggs, upon its arrival in New Orleans, indicated that it had received a terrific jolt; that the load had shifted and any number of cases in both ends of the car were badly smashed and leaking; that plaintiff company accepted the cases that showed no external evidence of damage and refused sixty-two cases which were broken; that some of the cases containing the eggs were almost flat and he considered them a complete loss; that the cases which plaintiff company accepted, upon a more minute examination, revealed that the loss therein averaged between four and five dozen eggs per case. Mr. Frank further testified "by damaged eggs" "I mean smashed and leaking eggs and stained eggs, the stained eggs being in that damaged condition by the smashed and leaking eggs". He further testified that when the carload of eggs arrived in New Orleans they were inspected by him and that the cases containing the eggs showed physical damage such as having the sides, tops, bottoms and ends jolted out of shape; that the eggs were packed in the usual and customary manner, in cases constructed of new material and he indicated by new material he meant the fillers and flaps, new wooden cases and new fillers; and that he was not in Chicago when the eggs were packed or shipped.
Defendant maintains that plaintiff, in this case, has failed to prove a prima facie case, in that the plaintiff must prove, by competent evidence, that the shipment was delivered to the initial carrier in good order and condition and that, upon the trial of this case, the only testimony which was offered by plaintiff to prove good order and condition of the shipment when delivered to the initial carrier, was the testimony of Mr. Frank, who did not inspect the shipment in Chicago, Illinois, and, of course, the clean bill of lading referred to heretofore.
Defendant places great emphasis on the fact that there was a provision contained in the bill of lading immediately below the description of the goods shipped reading "SL CW"; that this notation was made in accordance with Section 20 of the Federal Bill of Lading Act, 49 U.S.C.A. § 100, which means that the shipper "loaded, counted and weighed the shipment", and that this provision is placed on the *Page 90 
bill of lading to indicate that the carrier had nothing to do with the loading, counting or weighing of the contents of the car and, therefore, construing all of the provisions of the bill of lading, it appears from the express terms of the bill of lading that the carrier had no connection with the counting of the cases which were placed in the car. Defendant further maintains that the carrier expressly stipulated in the bill of lading that the contents of the cases and condition of the contents of the cases was unknown, and finally that this bill of lading could not be construed in such a manner as to create a presumption that the eggs were in good order and condition when they were delivered to the initial carrier.
Plaintiff, on the other hand, maintains that it has proven a prima facie case and has shown the following:
1. That the initial carrier received the shipment in good condition;
2. That the shipment arrived at its destination in a damaged condition; and
3. The amount of the loss.
The only question posed by virtue of the foregoing facts is whether plaintiff has proven that the initial carrier received the shipment in good order and condition.
In this, as in all cases, the burden of proving a prima facie case is on the plaintiff and the question of what the plaintiff must establish to prove a prima facie case is controlled by the provisions of the Interstate Commerce Act, Section 20,49 U.S.C.A. § 20, which is usually quoted as the Cormack Amendment to the Interstate Commerce Act.
The burden of proving a prima facie case in connection with damage to an interstate shipment was, in 1939, before the Supreme Court of Louisiana in Bancroff v. Yazoo Mississippi Valley Railroad Co., 194 La. 115, 193 So. 481, 482, and the court observed in that case: "In such cases it is only necessary for the consignee to allege and prove (1) that the initial carrier received the shipment in good condition, (2) that the shipment arrived at its destination in a damaged condition, and (3) the amount of the loss."
Defendant further contends that since plaintiff relies upon a clean bill of lading to show that the eggs were in good condition when delivered to the railroad, that there is no prima facie case made out and, in support of this contention, relies principally on the case of Louisville Nashville Railroad Co. v. Hendricks, 233 Ala. 259, 171 So. 273, which case involved damage to an interstate shipment of turnip greens from Brewton, Alabama, to Cincinnati, Ohio. The court in that case concluded that reliance upon the bill of lading was not sufficient since the carrier had no knowledge of the condition of the greens and the bill of lading was not an admission that the greens were in good condition.
It is to be observed in that case the claim was based upon damages suffered through decay and detioration en route, apparently due to defective refrigeration.
In the instant case, the claim for damages to the eggs is not based on the fact that there was spoilage, detioration, decay or delay in transit or other conditions inherent in the eggs themselves, but the claim is based on the fact that the crates containing the eggs were damaged sufficiently to break the eggs therein contained and cause the subsequent loss.
Assuming arguendo, that if this was a claim for damage to eggs due to spoilage, the case particularly relied upon by defendant might be analogous and apposite inasmuch as the railroad could not know the condition of the eggs insofar as their freshness was concerned and the exception contained in the bill of lading would be applicable, but this is a claim based upon the damage to the crates in which the eggs were contained, and it is our opinion that this is a very definite distinguishing characteristic.
Defendant, in addition to the Hendricks case, cited supra, relies upon the case of Arwady v. Texas N. O. R. R. Co., La. App., 18 So.2d 339. This case involved damage, by detioration, to a shipment of fruit, the cause of which was negligent delay. The distinction between this case and the case which we are presently analyzing is obvious because, as observed heretofore, *Page 91 
there is no claim in the instant case for spoilage of the eggs, but, on the contrary, the claim is based upon the fact that the crates themselves were damaged and the eggs therein contained were broken which, in our opinion, bears no relevancy to the condition of the contents of the crates at the point of origin.
In our opinion the exception in the bill of lading, to-wit: "contents and condition of contents of packages unknown" is not applicable here, insofar as the contents of these crates are concerned, in view of the fact that the crates containing the eggs were damaged, which, in turn, creates the strong presumption as to the cause of the eggs being broken. We believe that plaintiff has made a prima facie case and has proven that the eggs were delivered to the initial carrier in good condition and that the shipment arrived at its destination in a damaged condition.
It is argued on behalf of the defendant that the plaintiff bears the burden of establishing not only that the goods consigned were in good condition when loaded and were damaged upon arrival at the point of destination, the establishment of which fact forms the requisite basis of every claim for damages by a shipper of goods in interstate commerce, but the additional burden of establishing the fact that the goods were properly loaded because of the provision contained in the bill of lading "SL CW" (Shipper' loaded, counted and weighed) and, as a consequence thereof, that the damage could not have resulted from improper loading on the part of the plaintiff.
In our opinion this argument on behalf of defendant would have merit if defendant had not issued the bill of lading couched in the following terminology: "Received * * * at Chicago, Illinois, September 1, 1948, from Priebe Sons, Inc. the property described below in apparent good order except as noted (contents and condition of contents of packages unknown) * * *".
We believe, therefore, that this bill of lading, couched in the aforesaid terms, creates the unadulterated presumption that the crates, in which the eggs were contained, were in apparent good order when received by the initial carrier.
The sole remaining issue involved is the amount of the loss. The record reflects that sixty-two crates, each containing thirty dozen eggs or a total of 1860 dozen were damaged in transit and that the eggs were valued at forty-nine cents a dozen or $911.40.
While in defendant's answer it claims to have reworked the eggs rejected by plaintiff and that fifty-six cases and twenty-seven dozen were found to be in good order and condition and that it tendered these eggs to plaintiff, who refused them, and that defendant, in order to minimize the damages, sold the eggs for the account "of whom it may concern" for a net of $510.96, which sum was tendered to plaintiff and rejected, we do not find that defendant seriously urged this point on appeal. However, there is testimony in the record which indicates that plaintiff agreed to the reworking of the eggs if it be permitted to candle the eggs, which the railroad refused to agree to. We are of the opinion that plaintiff was within its right in refusing to accept the reworked eggs under these conditions, in view of the testimony of R. T. Ingram, an employee of the United States Department of Agriculture, who was qualified as an expert, to the effect that whenever "you have excessive leakers (broken eggs) * * * the balance of the eggs will have blind checks which could only be detected by use of a light. You would have a large amount of stained eggs and that reduces the interior quality of the eggs".
As to the price of the eggs which plaintiff claims should be paid it per dozen, there is in the record a letter from the railroad to the plaintiff reading in part as follows:
"Our reconditioning check of these sixty-two cases resulted in 56 good cases of eggs, 27 dozen good eggs, 27 dozen cracked eggs, 4 cases no value dumped, and 6 dozen no value dumped.
"We realized net proceeds of $510.96 on the salesable eggs.
"The value of the damaged eggs equals $61.74, based on 49¢ per dozen." *Page 92 
The defendant thus admitted that the eggs were valued at forty-nine cents per dozen, which is the amount claimed by plaintiff.
We feel that the plaintiff has adequately proven the amount of its damage.
For the reasons assigned the judgment appealed from is affirmed.
Affirmed.