JANVIER, Judge.
Plaintiff corporation is engaged in the sale of seafood, specializing in fresh shrimp and crabmeat. It ships its products to distant cities, always availing itself of the facilities of the defendant Railway Express Agency, Inc.
It alleges that on June 4, 1951, it delivered to defendant for shipment to A. J. Avetta in Pittsburgh, Pennsylvania, a shipment of one hundred pounds of crabmeat, the price of which was $110; that when the shipment was received by defendant it was in good, fresh and edible condition, and that when it was delivered to the consignee in Pittsburgh it was “in a bad, strong-smelling, slimy and non-edible condition”; that “the spoilage of the crabmeat in transit was due to the negligence of the defendant * * * in failing to keep the crabmeat fully iced in transit”; that the crabmeat in its spoiled condition “had no salvage value;” that the consignee paid express charges amounting to $7.33, that plaintiff was compelled to credit the said consignee for the price .of the crabmeat and for the express charges, and that, as a result, the loss sustained by plaintiff amounted to $117.33. It prays for judgment against defendant for this amount.
Defendant admits the receipt of the shipment and the transportation thereof and delivery to the consignee in Pittsburgh but for lack of information denies that the shipment was in' condition suitable for transportation when it was received. It admits that when the shipment was delivered in Pittsburgh it was in a -non-ediblé condition, but it denies that there was 'any negligente for which it is responsible. '
*420 In the First City Court for the City of New Orleans there was judgment in favor of plaintiff as prayed for and defendant has appealed.
Counsel for both parties agree that there is no dispute over the law which is applicable. They agree that, since the shipment originated in Louisiana and was delivered in Pennsylvania, the obligation of the carrier is controlled by the provisions of the Interstate Commerce Act, U.S.C.A., Title 49, sec. 20, par. 11, and they agree also that in a case of this kind the plaintiff, in order to make out a prima facie case, is’called upon to show: (1) that the shipment was delivered to the carrier in condition suitable to withstand the contemplated transportation ; (2) that it was delivered by the carrier to the consignee in bad condition, and (3) the amount of the loss; They also agree that when plaintiff makes out such a’ prima facie case the burden is then shifted to the carrier to prove itself free of negligence. Counsel for defendant concede that the amount of the loss sustained by the plaintiff has been shown and that it has been shown also that the shipment when delivered to the consignee was in bad condition.
But it is maintained that the plaintiff has not borne the burden of proving that when the shipment was delivered to the carrier for .transportation it was in a condition suitable for shipment to such a distant point as Pittsburgh.
There is no doubt that the record does not contain proof from which it can be said that it is definitely shown that when the shipment was received by the carrier it was in a condition suitable for so long a trip as that which was contemplated.
Two witnesses testified as to the condition of the crabmeat when it was delivered to the carrier in Louisiana. Neither of them stated positively that to his actual knowledge it was in a suitable condition for such shipment. Mr. Clarence G. Reuther, the President and apparently the General Manager of the plaintiff corporation, said that his company ships crabmeat all over the United States and that on the day on which this shipmént was made twenty-nine other shipments had been made without the receipt of any complaints. He said that it was customary not to ship to such distant points any crabmeat which was more than three days old. He was asked whether he had any personal recollection of having seen this particular shipment and he answered: “I could not say I did, no.” He produced a memorandum on which there were certain figures which showed that on the day on which the shipment was made his company had had on hand various packages of crabmeat and this memorandum showed that among the packages on hand on that day were some which had been in plaintiff’s possession as much as five days. There was then a colloquy between counsel as to whether Mr. Reuther had said that he shipped no meat which was more than three days old, and the notes of the stenographer were read and it was found that he had said that this particular shipment was “not over three days old,” but the effect of this statement was much weakened by the fact that he admitted that he, as a matter of fact, had no knowledge whatever concerning this particular shipment.
He says that .Mrs. Reuther had charge of any such shipments and that whenever a shipment was to be made tó a distant point she £>ut a special tag on it to show that it r'equired .unusually heavy icing. Mrs. Reuther was not produced to testify that she had done so in this case.
The other witness who testified concerning the condition of that particular shipment was Ralph Jones, an employee of plaintiff corporation who had been in its employ for about seven years. He stated that he personally packed all such shipments and “there was no shipment that went out that I didn’t ice.” He said, however, that he had no personal recollection of having made that particular shipment. There was no office record or other memorandum produced to show that in it there was no crabmeat which had been, on hand for more than three days. In other words, there was no record from which it could be *421 shown just how old was any of the meat-in this shipment.
In view of the fact that Mr. Reuther, the President of the plaintiff corporation, testified that it would not be safe to ship, for such distance, crabmeat which had been on hand for more than three days, we cannot do otherwise • than conclude that the plaintiff has not shown that' the meat in this particular shipment, when it was' delivered to the carrier, was in suitable condition for such a long journey.
The fact that the receipt or bill of lading made no mention of any deteriorated condition of the meat is of no importance whatever. In Taormina Corporation v. Luckenbach Gulf S. S. Co., Inc., La.App., 6 So.2d 235, 236, we considered the effect of the recital in the bill of lading that the shipment is in “ ‘apparent good order and condition’ ”, and said such a statement
“means only what it says and is an acknowledgment on the part of the carrier that from external appearance the shipment is in good order. * * *”
See, also, L. Frank & Co., Inc. v. Illinois Cent. R. Co., La.App., 43 So.2d 88; Arwady v. Texas & N. O. R. Co., La.App., 18 So.2d 339, 341.
It is particularly important where a shipment of perishable goods is concerned that the shipper should show that when dé-livered to the carrier the contents of the' package were in good condition. And we say this for the reason given in Arwady v. Texas & N. O. R. Co., supra wherein the Court of Appeal for the Second Circuit said:
“In a shipment of perishable goods, plaintiff must prove first that they were delivered to the carrier in sound condition ; and second, that they were delivered to the consignee in bad condition. Plaintiff has met the second requirement, but failed to meet the first. He cannot recover,, without meeting both. If this were not true in law, much unsound, decaying fruit and other perishables could and possibly would be unloaded on the carriers. If the fruit in this case was unsound and in bad condition when delivered to the carrier, then delay in shipment by the carrier could not be’ the proximate cause of its bad condition when delivered to plaintiff. Proof of the soundness and good condition of the fruit when delivered to the carrier was absolutely essential before plaintiff could be allowed to recover from the carrier for the bad condition of the fruit when received by him.”
Counsel for plaintiff strenuously argue that it is unreasonable to require a shipper, in such a case to prove the actual condition of the particular shipment and that all that should be required is that it should show that it was customary to inspect all - such shipments and to put into them only merchandise in good shipping condition. It may seem to place a hardship on a shipper to require definite proof of the condition of the, particular shipment in such case, but if it is not required then as was said in the Arwady case, the door would be open to the un-' scrupulous shipper to get rid of his spoiled merchandise in such a way. Were thé shipper not required to show this an unreasonable and unfáir burden would be placed on the carrier. ' ' '
Our conclusion is that the plaihtiff has, not borne the burden of proving that the shipment was delivered to the carrier in good condition.
Accordingly, the judgment appealed from is annulled, avoided and reversed and plaintiff’s suit is dismissed at' its cost.
Reversed.