**TEXTILE DISTRIBUTORS, INC., a Corporation, Respondent,**

v.

**ROADWAY EXPRESS, INC., a Corporation, Appellant.**

**No. 24272.**

Kansas City Court of Appeals.

Missouri.

Dec. 6, 1965.

Carl E. Laurent, Kansas City, for appellant.

William B. Teasdale, Kansas City, for respondent.

BLAIR, Judge.

Textile Distributors, Inc., Kansas City, Missouri, bought a shipment of Ivy League

pants, approximately 600 dozen pairs, from Blue Bells, Inc., Luray, Virginia. The merchandise was packaged in 30 separate cartons, and was delivered by Blue Bells to Roadway Express, Inc., a common carrier, operating in interstate commerce, and delivered by it to Textile in Kansas City. A bill of lading was issued and delivered by Roadway. The bill was proved by parol evidence without objection from Roadway. No claim was made or suggested that the bill bore any notation of any visible damage to the shipment at the time Roadway accepted it from Blue Bells for transportation to Textile. At the trial it was established that the bill had long since been returned by Textile to Roadway at Roadway's request. Roadway did not produce the bill at the trial and a finding was warranted that the bill was still in its possession. The inference from these facts is reasonable and strong that the bill bore no notation by Roadway of any visible damage to the shipment when it was delivered by Blue Bells to Roadway at Luray. Otherwise Roadway, we think, certainly would have exhibited the bill and the notation of damage at the trial.

Six days later the shipment was delivered by Roadway to Textile in a damaged condition. Textile claimed 44 pairs of pants were missing from the shipment. It valued them at $2.16⅔ per pair, or a total of $95.33. Subsequently, after conversations and correspondence between Roadway and Textile, Roadway sent Textile its check for the precise $95.33 Textile was claiming for the lost pants. Roadway did not object to the testimony on this aspect of the case, and its counsel expressly assented to the introduction of the check in evidence. Textile refused to cash the check for it claimed an additional $250.00 as damages to the cartons and the pants delivered. Textile's vice-president testified, "Well, it was obvious that it (the shipment) had been mashed. Something heavy must have been placed on it. Of course I did not see that. But it had been mashed, the cartons were busted, especially at the corners, and, they

were steel strapped, so that the bundle didn't come open, but the corners had been bursted, and the merchandise in there—it was in boxes and they had been mashed and crushed". He stated that all 30 cartons were in this damaged condition. Roadway's own representative testified: "All these 30 boxes were * * * in a bad condition, with the steel bands loose and all the cartons were crushed" and "torn". He stated that the pants had originally been "neatly folded" into the cartons and properly packaged. In his report to Roadway he stated: "Damage (was) of such nature that it could have been noticed when shipment was delivered" to Roadway at Luray for transportation to Textile.

Textile's vice-president testified that all of the merchandise had to be reworked: "We had to buy new boxes for the pants, we had to have the pants pressed, we had the expense of packing them into individual boxes so we could ship them to the stores, because the original boxes were crushed". He stated he had been in the general type of business operated by Textile about 35 years, and he "very definitely" could "make a determination after looking at these damages" of the reasonable cost of repairs. The reasonable cost of pressing the pants, purchasing new boxes and repacking the pants in them was $250.00.

Textile prayed for damages for $95.33 for the pants lost and $250.00 for pressing those *actually delivered and repacking* them, or a total of $345.33 plus costs. The cause was adjudged by the circuit court without a jury. Judgment went for Textile for $386.34, which included the sums prayed for and $41.01 interest. Roadway appeals.

■ A single question is presented: Did Textile carry its burden of proof by establishing, by sustantial evidence, that the shipment from Blue Bells destined to Textile was in good condition when delivered by Blue Bells to Roadway at Luray? The burden of showing that the merchandise was delivered to Roadway in good condition rested on Textile. Cudahy Packing Co.

v. Atchison, T. & S. F. Ry. Co., 193 Mo. App. 572, 187 S.W. 149. 6 Mo.Digest, Carriers ▪▪▪ Both parties are agreed that substantial evidence must establish delivery of the shipment to Roadway in good condition and its arrival at Textile in a damaged condition. Both are agreed that the shipment was in bad condition when it was delivered by Roadway to Textile at Kansas City.

▪ Ruling this controversy, we bear in mind that one or all of the elements required to be established in a civil suit may be proved by circumstantial evidence, as well as by direct evidence. Of course, the circumstances proved must be such that necessary facts to support the verdict reasonably follow from the circumstances, excluding guesswork, conjecture and speculation as to the existence of those necessary facts. Heinold v. Muntz T. V. Inc., (Mo.) 262 S.W.2d 32, 12A Mo.Digest, Evidence, ▪▪▪

▪ While the burden rested on Textile to show that the shipment delivered to Roadway was in good condition, it is generally held that the issuance by a carrier of a bill of lading or shipping receipt, without a notation thereon of visible damages or defects in the shipment, creates the presumption that, as far as ordinary inspection discloses, the shipment is free from visible damage or defects, and, to that extent, is in good condition. 14 Am.Jur.2d Carriers, Section 619; 13 C.J.S. Carriers § 254; Schraeder v. Robinson, 78 Cal.App.2d 328, 177 P.2d 788; L. Frank & Co., Inc. v. Illinois Cent. R. Co., La.App., 43 So.2d 88; Goldberg v. New York, N. H. & H. R. Co., 130 Me. 96, 153 A. 812; Adams Exp. Co. v. White, 132 Md. 626, 104 A. 110; Sprotte v. Delaware, L. & W. R. Co., 90 N.J.L. 720, 101 A. 518; Sumrell v. Atlantic Coast Line Railroad Co., 152 N.C. 269, 67 S.E. 585; Brown v. Southeastern Exp. Co., 192 N.C. 25, 133 S.E. 414; Schwalb v. Erie R. Co., 161 Misc. 743, 293 N.Y.S. 842; Beresin v. Pennsylvania R. Co., 116 Pa.Super. 291, 176 A. 774;

Louisiana Southern Ry. Co. v. Anderson, Clayton & Co., 5 Cir., 191 F.2d 784. This rule is stated in Silver Fleet Motor Express v. Prebul (Tenn.) 7 Fed. Carrier Cases 2264: "The ultimate question, then is: Does the failure of the freight bill to note any evidence of damage to the crate or contents constitute a prima facie showing that the shipment was in good condition when it was transferred to defendant at Chicago? * * * It would seem to us most natural that the freight bill would have taken cognizance of any apparent damage to the shipment. * * * The burden is, therefore, upon the defendant to show that the crate was in bad condition at that time (delivery to carrier) since it had the right, if not the actual duty, to refuse to accept the shipment unless properly crated and packed."

▪ This seems a reasonable and fair principle and we adopt it as the law of this case. Obvious damage to the 30 cartons of pants present when they arrived at Textile, would have been just as obvious when they were delivered to Roadway at Luray, if that damage was existent at that time. Roadway's issuance of a bill of lading, when the shipment was delivered to it at Luray, without any notation of visible damage thereon, warrants a finding that there was no such damage at that time. Necessarily, it follows, then, that the loosening of the metal straps binding the cartons and contents, and the mashing, crushing, bursting, and tearing of the cartons, must have occurred while they were in transit in the custody of Roadway. We note that no one claims that the damage occurred after delivery to Textile.

▪ Our reasoning derives strength, we think, from the fact that Roadway had the right to refuse to accept this shipment if, at Luray, it was in the damaged condition discovered on its delivery to Textile and, under normal circumstances, we believe it must be plain that any carrier would either refuse such a shipment, or note on the bill of lading any visible damages or de-

fects to protect itself. 13 Am.Jur. see Carriers, Section 247; Silver Fleet Motor Exp. v. Prebul, supra.

We acknowledge the existence of rulings dealing with instances where the damage to a shipment is not visible on ordinary inspection and bills of lading without notations of damage are held to be insufficient evidence of delivery of the shipment to the carrier in good condition. Cudahy Packing Company v. Atchison, T. & S. F. Ry. Co., supra, 187 S.W. p. 152. For obvious reasons these rulings are not applicable to the present controversy, for here the damage to all 30 cartons was not only visible on sight, but glaring. We notice also Robinson v. Railway Express Agency, Inc., Mo.App., 329 S.W.2d 242, cited by Roadway, which does not reach, much less determine, the principle we apply in this case.

Roadway's argument that there was no evidence that the pants were in good condition at Luray, must be brought into perspective. No one claims that the pants on delivery to Textile were soiled, unseamed, ripped or torn, or in any measure not in good condition or exactly as ordered, except Textile's vice-president testified that, in his opinion, they required reworking by pressing. This is the sole damage to the pants claimed in this suit. We believe Roadway's argument is untenable.

■ It will not do to argue that the damages to the cartons established only that the cartons themselves were damaged. In effect, this is what Roadway undertakes to do. We believe the damage to the cartons establishes more. All of the cartons appeared to have had "something heavy" placed on them in transit, and they were "torn", "mashed", "crushed" and "busted". Originally, according to Roadway's investigator, the pants had been "neatly folded" into the cartons. After the trial court found that the cartons were shipshape at Luray, it clearly had the right to find that the tearing, mashing, crushing and breaking of the cartons, together with the loosening of the metal straps binding them, disarranged and disarrayed the pants "neatly folded" into the cartons. Such a finding would merely result from drawing a reasonable inference from the sufficient circumstances and facts with which the court and parties dealt at the trial. Witting v. St. Louis & San Francisco R. Co., 101 Mo. 631, 14 S.W. 743, 10 L.R.A. 602, Heck v. Mo. Pac. Ry. Co., 51 Mo.App. 532, Blackmer & Post Pipe Co. v. Mobile & O. R. Co., 196 Mo.App 139, 190 S.W. 1032.

Nevertheless Roadway argues that there was no evidence that the pants had been pressed before shipping at Luray. Whether they were pressed there or not is to us not decisive. They arrived at Textile in cartons with the metal straps loose and the cartons "torn", "mashed", "crushed" and "busted". The pants originally "neatly folded" into the cartons required, as Textile's vice-president gave his opinion, pressing to render them salable to Textile's customers.

■ We think there is nothing in this record to convince that he was testifying to the need for a routine pressing of pants, delivered in a shipment in good condition, and to us it is quite clear that he was saying that the damage to the shipment disarranged and disarrayed the pants so much that they required pressing for salability. To us it was enough for Textile to establish these circumstances and facts to justify a reasonable inference by the trier of fact that the gross mishandling of the shipment by Roadway, and it seems gross to us, necessitated pressing the pants. An opposite finding, on this record, seems wholly unreal, and we reject it.

■ As to the 44 pairs of pants claimed by Textile to have been lost, Roadway says: "The shipper, perhaps, did not ship all of the pants, which can be assumed as easily as anything else * * *". We do not agree that one inference is as strong as the other, or that the inference of loss is not the stronger and supported

by substantial evidence. As observed, after arrival of the merchandise at Textile, there were conversations and correspondence between Roadway and Textile concerning the pants claimed to be lost. Textile claimed the value of the pants was $2.16⅔ per pair, or a total of $95.33. Eventually Roadway sent Textile its check for the precise $95.33 it was claiming for the lost pants. Roadway entered no objection to this testimony and its counsel expressly assented to the introduction of the check in evidence. Assuming that these conversations and this correspondence, together with the transmittal of the check to Textile for the exact amount it claimed for the lost pants, were objectionable as an offer in compromise, the testimony went in with the assent of counsel for Roadway and it is in no position to raise such an objection in this court to its own admission against interest. Offers in compromise are not rejected by the courts because they have no probative force, but because their reception by courts in evidence ordinarily would discourage out of court settlements of controversies. Certainly these transactions, however they may be characterized, have strong probative force, and since they are in the record, we find them to be substantial evidence of the loss of the pants, and this argument of Roadway fails. 27 Mo.Dig., Trial

After the presentation of all of the evidence recited, including the bill of lading with no notation of visible damage or defects, and the evidence of damage to the shipment on arrival at its destination, Textile's prima facie case on this record was established. Thereafter the failure of Roadway to go forward with any evidence to refute Textile's prima facie case, and it failed to do so, justified the trial court in determining the issues for Textile, unless a review by us under Civil Rule 73.01, V.A.M.R. discloses that the trial court's judgment was clearly erroneous. Buddy v. Wabash, St. L. & P. Ry. Co., 20 Mo.App. 206, Cudahy Packing Co. v. Atchison, T. & S. F. R. Co., 193 Mo.App. 572, 187 S.W. 149; 6 Mo. Dig., Carriers

We have reviewed this case upon both the law and all of the evidence as in suits of an equitable nature. Bearing in mind that we must not set aside the judgment unless it is shown to be clearly erroneous, and giving due regard to the opportunity of the trial court to judge of the credibility of the witnesses, our review has convinced us that the judgment of the trial court was on all grounds for the right party and it is affirmed.

All concur.