TUCKER, Judge.
Plaintiff-appellee brought suit against the delivering carrier, Illinois Central Railroad, for the cost of 6,000 damaged roofing tiles, part of a shipment of 27,000 roofing tiles shipped to plaintiff from Monterrey, Mexico, and received in Baton Rouge, Louisiana in May, 1968. Plaintiff sued for ONE THOUSAND EIGHT HUNDRED SEVENTY-NINE AND 80/ioo ($1,879.80) DOLLARS for items as follows:
6,000 pieces of roofing tile $428.68
Freight on the damaged tiles from Laredo, Texas to Baton Rouge, Louisiana 103.90
Mexican freight on damaged tiles 55.68
U. S. Custom duty 102.64
Usual retail mark-up 689.90
and for reasonable attorney fees of FIVE HUNDRED AND NO/100 ($500.00) DOLLARS.
The trial judge found that plaintiff had made a prima facie case showing that the *82 tiles were delivered to the carrier in good condition, and that the carrier failed to sustain its burden of showing that the damage resulted from some cause which was not the responsibility of the carrier. The trial judge awarded plaintiff-appellee $432.00, representing the cost of the damaged tile at $72.00 per thousand, plus $208.-56, representing %?ths of the total freight and customs duty charged for the shipment, or $640.56, in toto, plus legal interest from the date of judicial demand until paid. He taxed the deposition costs equally between plaintiff and defendant.
Plaintiff filed another suit, our Docket No. 8948, against the same defendant herein, regarding a second shipment of damaged roofing tile, which arrived in Baton Rouge more than a year later, in July, 1969. These two cases were consolidated for trial, and judgment was given against the plaintiff in the second suit. Inasmuch as plaintiff in that suit did not file an appeal bond, his appeal was never perfected, and said appeal in Docket No. 8948 will be dismissed ex proprio motu because of the failure of plaintiff-appellant to' properly perfect same.
Defendant carrier appealed from the judgment alleging error by the court as follows: (1) In holding that the notation, “in apparent good order”, on the U. S. bill of lading issued by the Texas-Mexican Railroad Company, which moved the freight car from Laredo, Texas, to Alice, Texas, discharged plaintiff’s burden of proving that the shipment of tile was in good order when delivered to the initial American carrier; (2) in failing to' give proper legal significance pursuant to 49 U.S.C.A. § 101 to the notation on the bill of lading, “SL&C”, which is an abbreviation for “Shipper’s load and count”, and holding that the shipper was exonerated from liability for damage to the inner portions of a cargo of brittle tile, especially when the damage was due allegedly to improper loading; and (3) in concluding as a matter of law that the damage to the tile was due to the negligence of the carrier rather than to improper loading by the shipper, after correctly concluding as a matter of fact that the damage resulted from overhead weight of the load.
The obligations of the carrier in this case are controlled by the provisions of the Interstate Commerce Act, Part I, Tit. 49, sec. 20(11) (49 U.S.C.A. sec. 20(11). The trial judge has stated in his written reasons for judgment that a consignee of goods shipped by common carrier makes out a prima facie case against the initial or delivering carrier for damage to1 goods in transit by showing: (1) receipt of goods by the initial carrier in good order and condition; (2) that the shipment arrived at its destination in a damaged condition; and (3) the amount of the loss.
The evidence is conclusive that the shipment of tile purchased by plaintiff from El Gallo, a Mexican building supplier in Monterrey, Mexico, and loaded by that company onto a freight car for shipment “in bond”, to Nueva Laredo> via the Mexican National Railway Company, arrived in Baton Rouge with approximately 6,000 broken tiles. The third condition for a prima facie showing, the amount of loss, is debatable only in regard to the loss of retail mark-up as an item of damage. It is only the first requirement, involving the condition of the goods transported, therefore, which is of principal concern herein.
Although the trial judge found that the plaintiff had sustained his burden of proving that the tile were delivered to the initial American carrier “in good condition”, basing his opinion particularly upon the bill of lading, we believe that he used the wrong standard for making out a prima facie case. We note in passing that counsel for defendant argued against the conclusiveness of the bill of lading which found the goods “in apparent good order”, using principles of law usually employed for the transit of perishables, which are often shipped in containers or are packed in such a way that it is impossible to in *83 spect them thoroughly. We think, however, this matter turns upon an interpretation of the Interstate Commerce Act, Part I, sec. 20(11), which obviates a necessity to determine whether or not the tile were in good condition, or whether or not tile may be analogized to perishables, with use of the principles pertaining thereto. In this regard we note the case of Reuther’s Seafood Co. v. Railway Express Agency, 71 So.2d 419, 420 (La.App.Orl.App.1954), in which it is stated that, in order to make out a prima facie case under the Interstate Commerce provision at issue, the plaintiff is called upon to show: “(1) that the shipment was delivered to the carrier in condition suitable to withstand the contemplated transportation. . . . ”
The tile were originally loaded by El Gallo Co. into a “D.F.” car, which is one with vertical dividers to keep the loads from shifting. There were no horizontal dividers, however, The tile were stacked lengthwise in layers at least six feet in height. The top layers of tile were not damaged. The broken tile appeared as they were unloaded from the top down, with the damage increasing toward the bottom of the load. The majority of the broken tile were in the lower half of the load. Mr. Elmore, Claims Supervisor for two years and an employee of defendants for twenty-six years, who inspected the damage, counted at least three rows deep of broken tile which he described as looking as though they had been “squashed”. It was his opinion that the damage was caused by overhead weight. He stated, also, that he saw no evidence of rough handling of the shipment.
Mr. S. D. Kimmel, an Import Inspector since 1952 for the Western Weighing and Inspection Bureau, which inspects all loads coming from Mexico, said on page 25 of his deposition:
“I’ve always told people that I had any contact with that each stack should be separated with fiberboard. Now, you take a solar screen tile, which is a wall tile, they must be in a container, or they must be within shelves; and this roofing tile here is more vulnerable to breakage than solar screen tile.
Q. Now, if somebody had asked you how to load these, this is the recommendations you would make to them? That they be separated by a piece of fiberboard ?
A. Yes, sir, between each layer, and also between each stack, and tile should be loaded on their edge lengthwise. If you’ve got an envelope, I’ll show you why, or a piece of paper is good enough. (A piece of paper is handed to the witness.) First of all, this tile is a little smaller at one end, and a little bigger at this end, and they overlap like this. All right, if you go into the car, and you stack them on end, you got all your pressure points right here, and it breaks. There’s only one way you can load it. You must set this tile on edge, lengthwise, like this. In other words, you got the small end against this end, this end here. The next tile the big end will be here, so that they’ll be edge to edge; then they’ll taper down, and you’ll have the small end here. You should have a separation here, between each stack, and you should have one underneath it.
Q. Fine.
A. If you set that piece of tile in that car in any other direction other than this, you’re going to have heavy damage. You can’t lay them down like this. You might think if you’d lay them down here like this that you would have your edgewise, but then your over head weight coming down on this curvature part would break.”
There is no testimony to refute this opinion of Mr. Kimmel’s. It is obvious to us that El Gallo did not load the tile in a manner consistent with the prevention of its damage in transit, and that the shipment of tile in question was not delivered to the initial carrier in the United States, (for it is only *84 that portion of the transportation within the confines of the United States which the Interstate Commerce Act governs) “in condition suitable to withstand the contemplated transportation.” Plaintiff has not made out a prima facie showing against defendant Illinois Central Railroad. When the shipment was inspected at Loredo on the American side it was discovered to have been improperly loaded and the defendant required a waiver from the plaintiff’s agent, Carillo, of any damage which might result to the shipment because of faulty loading.
Furthermore the effect on the bill of lading accompanying this shipment of the notation “SL&C”, which the trial judge did not mention, had the effect of exonerating the carrier for liability for damage due to faulty loading. The Interstate Commerce Act, Part I, Tit. 49, sec. 101 (49 U.S.C.A. § 101) provides in part: “ . The carrier may also by inserting in the bill of lading the words ‘Shipper’s weight, load, and count,’ or other words of like purport, indicate that the goods were loaded by the shipper and the description of them made by him; and if such statement be true, the carrier shall not be liable for damages caused by the improper loading or by the nonreceipt or by the misdescription of the goods described in the bill of lading . . . . ” The plaintiff has testified that the tile was loaded by the shipper El Gallo, and we have concluded from the evidence presented that the tile was improperly loaded. Defendant carrier cannot be held liable for their damage without any other showing of his negligence. The record is completely devoid of any evidence of defendant carrier’s negligence.
For the foregoing reasons we find that the trial court committed manifest error in adjudging the defendant negligent and responsible in damages.
The judgment of the trial court is reversed at plaintiff-appellee’s cost.
Judgment reversed.