Robert SEARS, d/b/a Sears Construction, Plaintiff-Respondent,

v.

Francis KISTNER and Elsie L. Kistner, Defendants-Appellants.

No. KCD 28499.

Missouri Court of Appeals, Kansas City District.

Aug. 8, 1977.

R. Leroy Miller, R. Max Humphreys, Allan D. Seidel, Miller, Humphreys & Seidel, Trenton, for defendants-appellants.

James S. Stubbs, Chillicothe, for plaintiff-respondent.

Before SWOFFORD, P. J., PRITCHARD, C. J., and DIXON, J.

DIXON, Judge.

Defendants appeal from a judgment for plaintiff in a court-tried case. The issues raised involve sufficiency of the evidence. The judgment is affirmed.

The evidence offered by Sears showed Francis and Elsie Kistner came to his home on September 20, 1974 and made inquiries about building a home for them on a foundation. The following morning he and his wife, who was his business partner in the home construction business, went and inspected the foundation. A blueprint for a precut home was discussed. Changes had to be made on the blueprint since the size of the Kistners' foundation did not conform to the size of the precut house. Later that same afternoon, Mrs. Kistner returned to Sears' office with some additional blueprint modifications and signed a contract authorizing work on the home to commence. At that time, she was given a "cost analysis sheet" which contained sums for heating, plumbing and labor to complete the building. Before construction commenced, Mrs. Kistner had made additional changes in the blueprints. These modifications were necessary since an outside contractor had poured concrete for a fireplace on the Kistners' foundation at a location determined by the Kistners. The Kistners lived in a trailer approximately one hundred feet from the site of their new home during the construction. Sears presented Mrs. Kistner with a bill for final payment for the work done, but she balked at paying it as she was unhappy with the location of the utility room and the fireplace. She also presented Sears with a list of other imperfections in the house. He and his carpenters made the repairs on the defective items. Kistner told her that he could not move the fireplace, but would rearrange the location of the utility room if she desired. Sears asked Mrs. Kistner if everything was proper, and she responded that the door still needed to be fixed. He assured her that it would be replaced. She then told him that she would make arrangements with the bank for the final payment, but this bill was never paid. Sears testified that he had secured a replacement door and that he was ready to put it in but that the Kistners refused to let him do so.

The foreman on the job said he had constructed the utility room exactly where Mrs. Kistner directed it to be placed. He also stated that Mrs. Kistner told him that there were no further repairs needed.

Mrs. Robert Sears stated she had been present during the negotiations between her husband and the Kistners in connection with his building a home for them. She had prepared the cost analysis sheet for the project. A total of $10,351 and "a few cents" were still owed by the Kistners for the work performed by her husband.

The heating and air conditioning contractor testified that he had put in the heating system at the Kistners' home and that it worked properly and met F.H.A. standards.

At the close of plaintiff's evidence, defendants' attorney made a statement that no submissible case had been made against Mr. Kistner. The court proceeded to overrule this "motion."

The defense called a residential building contractor who testified that he had been requested by Mrs. Kistner to inspect her completed home. He listed various deficiencies: air leaks, cracks between the bath tub and the bathroom wall, cabinets that did not fit properly, poor room layout, and a damaged front door. He estimated it would cost between fifty and one hundred dollars to replace the door, under one hundred dollars to fix the cabinets, and that repair of the air leakage would be minimal. He admitted the materials used in the home were acceptable in the building trade and that the defects would be considered minor in the industry.

Elsie Kistner reiterated the deficiencies mentioned and denied she ever told Mr. Sears or anyone else that no more repairs were needed. She admitted she had decided where to locate the fireplace.

The "points" in appellants' brief are as follows:

### I

That the judgment against Francis Kistner is against the weight of the evidence and is clearly erroneous.

### II

The court erred in overruling defendants' motion for directed verdict at the close of plaintiff's evidence for failure of proof of the contract.

### III

The amount of the verdict is against the weight of the evidence.

The points on the face of it raise no proper issues for determination since they do not comply with Rule 84.04(d). They are abstract statements of law without any attempt to relate the statements to either the evidence or the actions of the trial court. The second point has no place in a court-tried case. The standard of review of a court-tried case under Rule 73.01 is established in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976):

> "[T]he decree or judgment of the trial court will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. Appellate courts should exercise the power to set aside a decree or judgment on the ground that it is 'against the weight of the evidence' with caution and with a firm belief that the decree or judgment is wrong."

Despite the deficiencies in the "points," the argument portion of the brief permits understanding of defendants' attack on the judgment, and the issues will be considered.

■ Defendants' first point, that the judgment against Francis Kistner is against the weight of the evidence, is in the argument related to a claim that the evidence was only of a contract between Mrs. Kistner and plaintiff. It was not contested that only Mrs. Kistner signed the contract and received the cost analysis sheet. Both parties briefed the point on a theory of implied agency that is not in this case.

In his petition, plaintiff pleaded as follows:

"Comes now Robert Sears, d/b/a Sears Construction, and for his cause of action against the Defendants, states:

1. Plaintiff, a resident of Livingston County, Missouri, is engaged in the construction business in Livingston County, Missouri, and the Defendants are residents of Livingston County, Missouri.

2. On or about the 21st day of September, 1974, Plaintiff and Defendants entered into an agreement for the erection and finishing of a residential building on land owned by Defendants near Ludlow in Livingston County, Missouri."

In their answer, defendants specifically admitted paragraphs 1 and 2 of plaintiff's petition. This situation is similar to that in *Freeman Contracting Co. v. Lefferdink*, 419 S.W.2d 266 (Mo.App.1967), a suit for money judgment and for a mechanic's lien for improvements to the home of defendants husband and wife. In that case, the contract was signed by the husband alone. As to the liability of the wife, the court held:

> "In the instant case we need not assess the proof on this issue. The statements in the counterclaim that 'defendants' entered into this contract for which 'defendants' agreed to pay upon completion and the prayer that 'defendants' recover from plaintiff when read in context clearly constitutes an admission that Mr. Lefferdink's act in signing this contract was, by his agency, the act of his wife as well. Under such circumstances the plaintiff is not precluded as a matter of law from recovering a money judgment against both defendants and the lien could be impressed upon this property." 419 S.W.2d at 273.

See also *Kaufmann v. Krahling*, 519 S.W.2d 29, 32 (Mo.App.1975).

■ The second point as explicated in the argument seems to be an attack on the theory of plaintiff's petition. Defendants claim the only contract pleaded was the contract for the purchase of the precut home. The language of the petition is set forth above which pleaded the " . . . erection and finishing of a residential building . . . ." The defendants *admitted*

this agreement, and no issue remained for determination but the breach and damages. The evidence was sufficient under *Murphy v. Carron, supra,* to determine the terms of the contract, as the trial court did. The defendant raised no affirmative defense except a claim of non-performance.

■ For their last point, defendants argue that the verdict amount of $9,602.46 is against the weight of the evidence. Plaintiff's evidence was that defendants still owed $10,351.37 on the contract. Defendants, by pleading and proof, attempted to show that nothing was owed due to the poor quality of the work. Certain defects of construction were shown, although defendants' expert testified that the house was inhabitable, and that it would cost between fifty and one hundred dollars to replace a door and less than one hundred dollars to repair cabinets. The court gave judgment for $750 less than plaintiff claimed. Clearly, the evidence justified the trial court's refusal to find that the defects in construction completely offset plaintiff's claim. *Murphy v. Carron, supra.* Defendants argue alternatively that the verdict is erroneous because the amounts proved as costs for remedying defects when subtracted from the amount claimed do not equal the amount awarded. The fallacy of this argument is obvious. "[A] party ordinarily cannot complain on the grounds that the judgment against him was not as large as it should have been." *Cargill Inc., Commodity Marketing Division v. Hale,* 537 S.W.2d 667, 670 (Mo.App.1976); *Swiss-American Importing Company v. Variety Food Products Company,* 471 S.W.2d 688, 691 (Mo. App.1971).

The judgment is affirmed.

All concur.