**Donald Ray PLASTER and Luettia M. Plaster, Plaintiffs-Respondents,**

v.

**R. L. STANDLEY and Dorothy I. Standley, Defendants-Appellants.**

No. 10314.

Missouri Court of Appeals, Springfield District.

July 26, 1978.

Dennis C. O'Dell, Springfield, for plaintiffs-respondents.

Charles M. Wantuck, Springfield, for defendants-appellants.

Before BILLINGS, C. J., and TITUS and FLANIGAN, JJ.

PER CURIAM:

Plaintiffs (husband and wife) sued defendants (husband and wife) for possession of certain real estate located in Block 2, Hiday's Addition to the City of Springfield and for damages. Defendants counterclaimed to have title to the disputed property quieted in them. The trial court obliged all parties in part and defendants appealed.

To conserve the 1,000 proverbial words a picture is said to replace, we offer the following drawing of the properties in question:

(To avoid confusion caused by death of spouses and remarriage of surviving former owners, the original names of previous owners are used in the singular to trace ownership of lots involved in this litigation).

Wadley owned Lots 5 and 8 and the south 6 feet of Lots 6 and 7 in 1944. A north-south fence then existed near the east end of Lot 8. In 1951 Wadley sold Lot 8 and the south 6 feet of Lot 7 to Crawford who already owned the north 50 feet of Lot 7. While Wadley thought the fence was the line separating Lots 5 and 8, Wadley intended that Crawford have whatever the deed described. At the time of the sale, Wadley had a horse and dog and Crawford had chickens so they agreed to leave the fence in place as long as Wadley resided in Lot 5. In 1955 Wadley sold Lot 5 and the south 6 feet of Lot 6 to defendants.

Crawford had claimed to defendants that defendants did not own to the fence line and had, without objection, removed most of the fence by 1958. Defendants removed the rest of the fence in about 1965. Crawford mowed in the area east of the removed fence line and objected to defendants' attempted occupancy of that area. In 1967 Crawford sold Lots 7 and 8 to plaintiffs and no north-south fence was standing at that time.

Prior to the history herein recounted, the 20 foot north-south alleys between Lots 5 and 8 and between Lots 6 and 7 had been vacated. Instead of each abutting lot owner moving or claiming to the middle of the vacated alleys, the east property owners moved or claimed to the west edge of the entire alley, i. e., owners of Lots 5 and 6 claimed the entire alley lying west of their

lots, while the owners of Lots 7 and 8 claimed ownership of the entire alley situate west of their lots. Long before the remembrance of any viable witness, a building (see drawing, supra) described as a "Frame Chicken House & Garage," had been constructed and stood partly on the southwest corner of Lot 5 and a few feet west of the center line of the vacated alley. Defendants grew tomatoes in the area behind or west of this building.

In 1954 Wadley had a survey made of the lots. It showed pins on the south line of Lot 8 and on the north line of the south 6 feet of Lot 7 which were located 5 feet west of the west boundary of the vacated alleyway lying between Lots 5 and 8. The survey did not show the existence of any fence.

Two years after plaintiffs purchased Lots 7 and 8, i. e. in 1969, defendants had a north-south chain link fence erected. At the north end it was 16 feet west of the west edge of the vacated alley lying between Lots 5 and 8; at the south end, the fence was 12 feet west of the west edge of the alley. In 1974 plaintiffs had a survey made which showed the location of the fence as illustrated by our above drawing. Plaintiffs showed defendants the survey results and objected to the fence and thereafter this action was instituted.

Except for the west 10 feet of the vacated alley lying between Lots 5 and 8, the trial court, inter alia, found that defendants did not have adverse possession of the property in dispute for any consecutive ten year period. The court expressly noted its determination of the issues was predicated "on the basis of credibility of witnesses" and observed that if defendants at any time had possession of Lot 8 to the site of the old north-south fence, that possession "was interrupted by the Crawfords taking down the old fence and contesting defendants' right to the disputed strip and thereafter by plaintiffs mowing in the strip and then objecting after the 1974 survey was made." Plaintiffs were additionally awarded judgment for $100 and the costs were taxed one-half to each side.

We now proceed to a consideration of the points relied on as they appear in defendants' brief.

Defendants' first point is an abstraction penned in disregard of the mandatory requirements of Rule 84.04(d), V.A.M.R., which are applicable to appellate review of court-tried cases. *Simpson v. Island View Sales Corp.*, 540 S.W.2d 624, 625[1] (Mo.App.1976); *Bell v. Bell*, 538 S.W.2d 733, 735[2] (Mo.App.1976); *Long v. Lincoln*, 528 S.W.2d 512, 513[1] (Mo.App. 1975). Although it is briefly noted that defendants' initial point complains of the refusal of the trial court to sustain their motion for judgment when plaintiffs initially rested, we are bound to observe that defendants waived their objection to overruling of the motion when they thereafter produced exhibits and testimony relative to plaintiffs' claim in the cause. *Sears v. Kistner*, 555 S.W.2d 74, 76[2] (Mo.App.1977); *Cragin v. Lobbey*, 537 S.W.2d 193, 196[6] (Mo.App.1976); *Morris Plan Co. v. Universal Credit Co.*, 237 Mo.App. 365, 374, 168 S.W.2d 136, 140[8] (1943); Rule 73.01, V.A. M.R.

Defendants' second point reads: "The burden of proof rested with plaintiffs on the whole case, but when defendants proved the five (5) elements necessary for their claim and made out a prima facie case, the burden shifted to plaintiffs to go forward on the issue of adverse possession, which burden plaintiffs failed to sustain." This point on its face raises no proper issue since it does not comply with Rule 84.04(d). It contains merely abstract statements. Wherein and why defendants proved the five elements necessary for their claim (whatever those elements may be), and why the burden shifted to plaintiffs and wherein and why plaintiffs failed to sustain that burden is left for this court to guess and speculate. Merely alleging what errors are without asserting wherein and why they are errors preserves nothing for appellate review. *W. H. Powell Lumber Co., Inc. v. Federal Land Bank Ass'n of Mountain Grove-Rolla*, 561 S.W.2d 700, 704[10] (Mo. App.1978). Moreover, points relied on

which state nothing save conclusions and which are bare of references to evidence do not require our consideration on appeal [*State ex rel. State Highway Comm. v. Graeler*, 527 S.W.2d 421, 425[4] (Mo.App. 1975)] because we have no duty to seine the transcript nor the argument portion of an appellate brief to come by the meaning of abstractions penned in briefs under the heading "Points Relied On." *Dors v. Wulff*, 522 S.W.2d 325, 327[5] (Mo.App.1975).

▮▮▮ Defendants' points relied on numbered three and four present pure abstractions which do violence to Rule 84.04(d). They concern themselves with the general proposition that the failure of a party to testify in his own behalf who is possessed of facts germane to the issues on trial, raises a strong presumption and inference that his testimony would be unfavorable to his cause. *Stringer v. Reed*, 544 S.W.2d 69, 74[9] (Mo.App.1976). Specifically, defendants' points on this matter concern the failure of plaintiff wife to testify. The rule permitting the inference, supra, does not apply where the testimony is unnecessary as here because plaintiff husband did testify [*Talley v. Richart*, 353 Mo. 912, 918–919, 185 S.W.2d 23, 27[10] (1945)], and albeit we assume the validity of defendants' contention, the failure of plaintiff wife to testify did not deprive plaintiffs of their right to submit their case to the court but merely raised, at most, an unfavorable inference to be believed or not by the trier of the facts. *Hughes v. Prudential Ins. Co.*, 179 S.W.2d 630, 635[4] (Mo.App.1944); 31A C.J.S. Evidence § 156(4), at p. 424. We are certain the learned trial judge was well aware of the foregoing. As he expressly noted in his findings, his conclusions, in part, were made "on the basis of credibility of witnesses"; this would evidence a disclaimer of any presumption or inference arising, if so, from plaintiff wife's failure to testify.

▮▮▮ The remaining points numbered 5 to 12 are likewise penned in defendants' brief contrary to Rule 84.04(d). They read: "5. Defendants' title by adverse possession was as valid as one acquired by deed." "6. Standleys' possession, claiming title, ripened into title, regardless of any survey subsequently made by witness Durham." "7. The evidence showing acquiescence of the interested parties for a number of years that the boundary line be considered as such, is conclusive evidence of an agreement to that line, and defendants' use and possession of the property was sufficient evidence that there was an agreement to establish the boundary line as defendants claimed, and the length of time of such acquiescence need only be long enough to evidence mutual acceptance of the dividing line and for no prescribed period." "8. Whether the old fence was or was not intact at the time of plaintiffs' occupancy would not defeat defendants' claim in view of the 12 or 16 years adverse possession, and the presence of the remaining monuments, the existence of which are admitted; and any temporary removal of an enclosure does not evidence abandonment especially where the other boundary markers remained." "9. When plaintiffs first entered their property in 1967 they took subject to the possession and rights of defendants; and by operation of law plaintiffs had actual knowledge of defendants' claim of title by reason of the boundary monuments, garden, shed, posts, flowers, wire, work and maintenance, and actual occupancy." "10. Plaintiffs did not prove any damages with certainty and left the matter to speculation or 'out of the air', and had no damages whatsoever, not being the legal owners." "11. The facts show title in defendants by adverse possession and the Court erred in its judgment because the Findings of Facts are not supported by the evidence and are clearly erroneous; the defendants having proved all requisites of adverse possession for the statutory period." "12. The evidence shows that plaintiffs failed in their claim for possession and that defendants established their claim and title to the property involved; and this Appeals Court should review both the law and the evidence in the case."

It is readily observed that points 5, 6, 7 and 10 are merely abstract statements of law and purported fact which preserve

nothing for appellate review. *State ex rel. Churchill Truck Lines, Inc. v. Public Service Commission*, 555 S.W.2d 328, 330[1] (Mo. App.1977). Points numbered 8, 9, 11 and 12 are simply abstractions which do not undertake to state wherein and why, by reason of the existence, vel non, of the old fence, plaintiffs took subject to the possession and rights of defendants, wherein and why plaintiffs did not prove any damages, wherein and why the findings of facts are not supported by the evidence and are clearly erroneous, wherein and why defendants allegedly and unerringly proved all requisites of adverse possession, et cetera. *Estate of DeGraff*, 560 S.W.2d 342, 345[4] (Mo.App.1977); *Cato v. Modglin*, 545 S.W.2d 307, 309[2] (Mo.App.1976); *Powers v. Powers*, 544 S.W.2d 339, 340[3] (Mo.App. 1976); *Cavaness v. Armstrong*, 525 S.W.2d 446, 447[2] (Mo.App.1975); *Brown v. Wilkinson*, 495 S.W.2d 678, 681[5] (Mo.App. 1973). Points that cannot be clearly understood without reference to other portions of an appellant's brief preserve nothing for appellate review. *State v. Perry*, 565 S.W.2d 841, 843[1] (Mo.App.1978); *State v. McClain*, 541 S.W.2d 351, 354[7] (Mo.App. 1976).

Although we have found that none of defendants' points relied on have preserved anything for appellate determination, nevertheless we have perused the transcript on appeal and have read in their entirety the briefs of the parties. In accordance with the requirements of Rule 73.-01, V.A.M.R., we have reviewed the case upon both the law and the evidence as in suits of an equitable nature and have given due regard to the opportunity of the trial court to have judged the credibility of the witnesses. We conclude there existed substantial evidence to support the judgment, that it is not against the weight of the evidence, and that it does not erroneously declare or apply the law. *Murphy v. Carron*, 536 S.W.2d 30, 32[1] (Mo. banc 1976).

Judgment affirmed.

All concur.