Paul C. TRIPP et al., Plaintiffs,

and

Joe T. Sullivan and Anne E. Sullivan, husband and wife, Plaintiffs-Respondents,

v.

Burley Wilbur HARRYMAN and Eula Mae Harryman, husband and wife, Defendants-Appellants,

and

Jess Harryman et al., Defendants.

Nos. 11403, 11675.

Missouri Court of Appeals, Southern District, Division One.

March 11, 1981.

Motion for Rehearing or to Transfer to Supreme Court Denied March 27, 1981.

Application to Transfer Denied May 11, 1981.

William D. Powell, Craig R. Oliver, Daniel, Clampett, Rittershouse, Dalton & Powell, Rodney E. Loomer, Turner, Reid, Duncan & Loomer, Springield, for plaintiffs-respondents.

Dale L. Davis, Bussell, Hough, Bernhardt, Leighton & O'Neal, Springfield, Ralph Gilchrist, Bolivar, for defendants-appellants.

TITUS, Judge.

Plaintiff Sullivan et uxor (hereinafter plaintiffs), brought suit in equity to quiet title to a disputed strip of land 16½ feet (1 rod) wide, to enjoin defendants from interfering with their enjoyment and use of that land, and for reformation of the appropriate warranty deeds. Defendant Harryman and wife (herein defendants) filed a counterclaim in damages for statutory trespass.[1] Several other counts in the petition and counterclaim involved other parties to the lawsuit. These were settled during the course of trial and are not at issue in the instant appeal. Defendants' counterclaim was tried to a jury which returned a verdict for plaintiffs. The trial court found the equity issues in favor of plaintiffs, ordered the requested reformation and granted the injunction. Defendants appeal both the judgment entered on the jury verdict and the reformation decree, which appeals have been consolidated by order of this court.

Prior to 1973, defendants were the record owners of the southeast quarter (SE ¼) of the northwest quarter (NW ¼) of Section 20, Township 33, Range 18. At this time, the owners of the quarter-quarter-sec-tion directly south of defendants were Colonel and Mrs. May, who had purchased the northeast quarter (NE ¼) of the southwest quarter (SW ¼) of Section 20, sight unseen, in 1966. Since the May's 40 acres were landlocked, Colonel May approached defendant Harryman for the purpose of negotiating an access route across defendants' property. These negotiations culminated in the execution of a general warranty deed, dated March 14, 1973, by which defendants conveyed to the Mays the "East One (1) Rod of the South-east quarter (SE ¼) of the North-west quarter (NW ¼) of Section Twenty (20)." By constructing a north-south road over this strip, the May's 40 acres would have a vehicular outlet to the county road which runs in a diagonal northwest-to-southeast direction across the northeast corner of defendants' property.

According to Col. May's uncontroverted testimony at trial, introduced via deposition, the location for the access strip was chosen because it "was the end of [defendant's] property and it would not affect him in any way, other than shortening his property sixteen and a half feet." Col. May's deposition further revealed that the legal description for the strip of land conveyed to the Mays was taken from "the official description at the court house" of defendants' 40 acres.

On March 23, 1973, only nine days after the deed from defendants had been executed, the Mays sold the property (including the one-rod-wide strip) to Mr. and Mrs. Raymond S. Scott. The Scotts, in turn, sold the entire parcel to plaintiffs on November 7, 1974. All of these several conveyances were accomplished by the usual printed form general warranty deed.

Two years later or around February of 1976, plaintiffs began to plan the actual construction of the access road. In accordance with the prior negotiations between defendant Harryman and Col. May, the fence which bordered defendants' property

---

1. Secs. 537.340–.350 RSMo 1978. Although defendants' pleading does not refer to these statutes by number, their allegations and prayer for damages demonstrate that such were intended.

on the east (hereinafter, the Existing Fence) was to be utilized as the eastern boundary of the road. Therefore, plaintiff Sullivan approached defendants' son, Jess Harryman, who at the time was managing the property for his parents, about the possibility of pushing brush and trees onto defendants' land. Jess agreed, provided plaintiffs would furnish materials and labor for a new fence on the west side of the proposed road. Although Jess believed an agreement had been made on these terms, plaintiff Sullivan testified at trial that he never agreed to such conditions and that he thought it unreasonable for him to have to furnish both labor and materials.

Subsequently, plaintiff Sullivan contacted one Homer Parris, the owner of the tract immediately east of defendants. An agreement was reached whereby plaintiffs would furnish the materials and Parris the labor to rebuild the Existing Fence. In return, plaintiffs would be allowed to push brush onto Parris' property.

Plaintiffs then hired a bulldozer operator to clear the proposed roadway of trees and brushy undergrowth. At trial, the bulldozer operator testified that when he bulldozed the road, he never deviated more than 16½ feet west of the Existing Fence which formed the eastern boundary of plaintiffs' access strip. In compliance with the agreement and with the help of some neighbors, Mr. Parris rebuilt the Existing Fence in the same location as it had previously existed, using new posts and wire furnished by plaintiffs. Although Jess Harryman (defendants' son) was present while this construction was taking place, according to Mr. Parris, Jess voiced no objection except that he thought he had plaintiffs' commitment to build a new fence along the road's western boundary.

Soon after the completion of the bulldozing, the controversy which culminated in the present litigation began to brew. Neither the transcript on appeal nor either parties' briefs are clear on this point, but it appears that a survey was run whereby it was determined that the Existing Fence did not correspond with the quarter-section line

which formed the eastern boundary of defendants' property. In other words, plaintiffs' access road was not built on the strip of land actually deeded by defendants to plaintiffs' predecessors in title, Col. and Mrs. May, for this purpose. Rather, the road was built some 40–50 feet west of the quarter-section line, with the result that it divided defendants' property instead of merely "shortening" it by 16½ feet. When Jess Harryman learned of the discrepancy, he tore out a portion of the fence put up by Mr. Parris and proceeded to construct a series of fences which had the effect of rendering the access road unusable by plaintiffs. Thereupon, plaintiffs filed this suit with the results as noted at the outset of this opinion.

■ On appeal, defendants raise eight points relied on. For ease of treatment, we shall deal with the last one first. Defendants' eighth point relied on concerns their counterclaim for trespass, which was tried to a jury, and reads as follows: "The trial court erred in submitting Instruction No. 4 to the jury on Count I of Defendants' counterclaim for the reason that: A. Instruction No. 4 submitted to the jury an affirmative defense which was not pleaded by Plaintiffs. B. The trial court improperly allowed Plaintiff Sullivans to amend their reply to Count I of Defendants' counterclaim to include the affirmative defense of consent when there was no testimony in evidence to support such alleged defense." This point is fatally defective. A trial judge is vested with broad discretion in granting leave to amend pleadings, which may be done at any time during the course of the proceedings, even after judgment. A party objecting to the exercise of this discretion must demonstrate that the trial court's action prejudiced his case. Rule 55.-33(b), V.A.M.R.; *Siedler v. Tamar Realty Co.*, 491 S.W.2d 566, 568[2] (Mo.App.1973). Here, defendants' point relied on not only fails to explicate "wherein and why", as required by Rule 84.04(d), V.A.M.R., the trial judge abused his discretion by granting plaintiffs leave to amend their pleadings to include the affirmative defense of

consent but also fails to advise "wherein and why" the exercise of discretion was prejudicial. Nevertheless, and in excess of duty, we note that the argument portion of defendants' brief claims prejudice because they "had no opportunity to prepare to meet this defense." This claim is undermined by the fact that defendants neither objected on such grounds to the testimony introduced by plaintiffs on this point nor requested a continuance. *Siedler,* supra, 491 S.W.2d at 568–569[3]. Similarly, testimony in the transcript itself belies defendants' contention that no evidence was presented to support plaintiffs' consent defense. We find no prejudicial error.

Having dispensed with defendants' eighth point relied on, we now turn to the others, all of which involve plaintiffs' equity action for reformation, and with respect to which the trial court sat as fact–finder. Defendants' first point relied on reads: "The trial court erred in ordering reformation of the deed, dated March 14, 1973, from Defendants Harryman to Lavern and Margie May, for the reason that Count V of Plaintiffs' Third Amended Petition failed to allege any facts which would support a finding of mutual mistake on the part of the parties to the deed in question and, therefore, Count V of Plaintiffs' Third Amended Petition failed to state a claim for reformation."

■ An action for reformation based on mutual mistake requires the petitioner to allege three elements: (1) the pre-existing agreement of the parties; (2) the mistake; and (3) the mutuality of the mistake. *Ethridge v. Perryman,* 363 S.W.2d 696, 698[2] (Mo.1963). Paragraphs Five and Six of Count V of plaintiffs' Third Amended Petition aver facts encompassing these elements, as follows: "5. That on or about the 14th day of March 1973, defendants, Burley Wilbur Harryman and Eula Mae Harryman, conveyed the following described property to Lavern May and Margie N. May (Plaintiffs' Sullivans' predecessors in title) by General Warranty Deed: East one (1) rod of the Southeast Quarter (SE ¼) of the Northwest Quarter (NW ¼) of Section 20, Township 33, Range 18. 6. That Plaintiffs Sullivan (and their predecessors in title), on the one hand, and Defendants, on the other hand, have looked upon, regarded, and treated the conveyance described in paragraph 5 (supra) as a conveyance of one rod West of the Existing Fence; and that Plaintiffs Sullivan changed their position in reliance upon the existing fence by constructing a road immediately to the West of the existing fence." It is manifest that the factual elements of a reformation action grounded on mutual mistake were pleaded by plaintiffs. The pre-existing agreement is found in the allegation that the parties to the deed agreed on the Existing Fence as the boundary of the property conveyed. The fact that the conveyance was believed to have transferred a one-rod-wide strip west of the existing fence comprises the mistake, and the mutuality of that mistake is found in that defendants, plaintiffs, and plaintiffs' predecessors in title all held this same belief.

■ Though plaintiffs' petition does not use the phrase "mutual mistake," the mere absence of these words does not render the pleading defective. *Wolz v. Venard,* 253 Mo. 67, 83, 161 S.W. 760, 764[2] (1913). A petition is not insufficient "merely because of a lack of definiteness or certainty in allegation or because of informality in the statement of an essential fact." *Matthews v. Truxan Parts, Inc.,* 327 S.W.2d 28, 39[15] (Mo.App.1959). Rule 55.05, V.A.M.R., requires that a plaintiff only plead "short and plain statement[s] of the facts showing that the pleader is entitled to relief." Moreover, the prayer for relief in Count V of plaintiffs' petition specifically requests "the appropriate reformation of deeds." Had defendants been unsure of the import of plaintiffs' pleading, a procedural mechanism is available by which they could have required plaintiffs to be more definite and certain in their pleadings, i. e., a motion for more definite statement. Rule 55.27(d), V.A.M.R.; *Fish v. Fish,* 307 S.W.2d 46, 50[5] (Mo.App.1957). Defendants' first point is denied.

949

■ Defendants' second point relied on: "The trial court erred in overruling Defendants' objections to the admission of portions of Mr. May's deposition dealing with discussions between Mr. May and Burley Harryman prior to execution of the March 14, 1973, deed for the reason that the Parol Evidence Rule requires exclusion of evidence regarding negotiations *occurring prior to and culminating in the execution of a written instrument.*" However, this point is not well taken. While defendants' statement regarding the effect of the parol evidence rule is correct in a general sense, the parol evidence rule, like many other evidentiary rules, is riddled with exceptions. The operative exception for present purposes comes into play when the equitable relief of reformation based on mutual mistake is sought. 4 Williston on Contracts, 3d ed., § 631, pp. 948–949; *Walters v. Tucker*, 308 S.W.2d 673, 675[1] (Mo.1957); *Martin v. West*, 589 S.W.2d 337, 338[1] (Mo.App.1979); *Snider v. Miller*, 352 S.W.2d 161, 165[7] (Mo. App.1961). As the St. Louis Court of Appeals (now Eastern District) stated in *Hoffman v. Maplewood Baptist Church*, 409 S.W.2d 247, 250–251[3] (Mo.App.1966): "Where it is contended, as here, that the written instrument, by mutual mistake, does not express the true intention of the parties, the preceding agreement, not only may be shown, but *must be shown* in order to afford relief in an action to reform the instrument...." (Emphasis added). Since proof of a pre-existing agreement is an essential element of a plaintiff's action for reformation based on mutual mistake, to hold that the parol evidence rule excludes evidence on this point would foreclose such an action virtually completely. Defendants' second point is denied.

■ Defendants' third point relied on states: "The trial court erred in ordering reformation of the deed dated March 14, 1973, from Defendants Harryman to Lavern and Margie May for the reason that Plaintiff-Respondents failed to meet their burden of proving the existence of a prior agreement and a mutual mistake by clear and convincing evidence." This point, like defendants' eighth point, supra, violates the mandatory requirements of Rule 84.04(d), V.A.M.R. These requirements are applicable to court-tried cases. *Plaster v. Standley*, 569 S.W.2d 784, 787[2] (Mo.App.1978); *Simpson v. Island View Sales Corp.*, 540 S.W.2d 624, 625[1] (Mo.App.1976). The point states the correct burden of proof borne by a plaintiff in an action for reformation [*Leimkuehler v. Shoemaker*, 329 S.W.2d 726, 730[3] (Mo.1959)], but, without more, it merely expresses an abstract statement of the law which preserves nothing for review. *Plaster*, 569 S.W.2d at 788–789[11]; *Brown v. Wilkinson*, 495 S.W.2d 678, 681[4] (Mo.App.1973). Nevertheless, under the standards for appellate review of court-tried cases laid down in *Murphy v. Carron*, 536 S.W.2d 30, 32[1] (Mo. banc 1976), we observe, ex gratia, that the transcript reveals plaintiffs did adduce sufficient evidence at trial to satisfy their burden of proof.

Defendants' fourth point relied on: "The trial court erred in excluding from evidence Defendants' Exhibit H on the basis that it constituted settlement negotiations for the reason that said Defendants' Exhibit H did not constitute settlement negotiations and was highly probative evidence of Plaintiffs' intent, at all relevant times, to claim only the land as described in the March 14, 1973, deed to the Mays, Plaintiff Sullivan's predecessors in title." The exhibit referred to is a document dated May 1, 1976, which recites that a boundary dispute had arisen between Jess Harryman et uxor and plaintiffs, and that the parties agreed to have the property surveyed to establish the boundary lines and to split the costs therefor.

■ Missouri case law holds that evidence and argument concerning settlement negotiations are to be excluded at trial for the reason that such efforts should be encouraged and a party should not be penalized if the negotiations fail to materialize. *Nichols v. Blake*, 395 S.W.2d 136, 142–143[10] (Mo.1965); *Textile Distributors, Inc. v. Roadway Express, Inc.*, 397 S.W.2d 760, 765[9] (Mo.App.1965). Here, the recitations

in the document itself and a review of the facts and relevant dates clearly demonstrate that the agreement was entered into well after the dispute had arisen. Even though the plain language of the agreement arguably may not explicitly evidence an intent of the parties to compromise the dispute, the admissibility of evidence is a matter within the discretion of the trial judge. Absent a clear abuse, an appellate court on review will not interfere with the trial judge's ruling. *State v. Harlston*, 565 S.W.2d 773, 782[15] (Mo.App.1978); *Aiple v. South Side National Bank in St. Louis*, 442 S.W.2d 145, 152[7] (Mo.App.1969). Defendants have failed to clearly show that such abuse occurred. Defendants' fourth point is ruled against them.

Defendants' fifth and sixth points relied on read as follows: "V. The trial court erred in overruling Defendants' objection to the allowance of testimony by Mr. Sullivan regarding statements made to him by Don Strickland for the reason that such testimony was based upon hearsay and for the further reason that such testimony was irrelevant to any issues in the lawsuit. VI. The trial court erred in ordering reformation of the March 14, 1973, deed on the asserted basis of acquiescence in the 'Existing Fence' for a period of 'more than twenty-five years' for the reason that there was no substantial evidence to support the trial court's finding 'that the existing division fence had been in the same general location for more than twenty-five years and that the Parris' and Harrymans and their predecessors in title used the property to the fence and that by reason of that use, the fence became the accepted property line.'"

Regarding point five, an assertion that certain testimony constituted hearsay fails to comply with the requirements of Rule 84.04(d), V.A.M.R. and, therefore preserves nothing for review on appeal. Not only does the point fail to state "wherein and why" the trial court's ruling was erroneous, but it also does not isolate and formulate any precise issues to be reviewed. *State v. Morrow*, 541 S.W.2d 738, 740[1] (Mo.App.1976). Similarly, the assertion that the testimony was irrelevant is merely a bald claim of error which does not state "wherein and why" the testimony was irrelevant, contrary to the mandates of Rule 84.04(d), V.A.M.R. *Id.* at 741[6]. An appellate court has no duty to search the legal file, transcript, or the argument portion of an appellant's brief to understand the intendment of a point relied on. *Brewer v. Blanton*, 555 S.W.2d 381, 386[12] (Mo. App.1977). Defendants' fifth point is denied.

Defendants' sixth point relied on is subject to a fate similar to the fifth. Defendants' claim that there was no substantial evidence to support a particular finding of the trial court violates Rule 84.04(d), V.A.M.R., because it fails to explain "wherein" there was no substantial evidence to support the finding. In order to flesh out, as it were, such an abstraction, this court would have to sift through the record on appeal, thereby becoming, in effect, an advocate on defendants' behalf. This is not the proper function of the appellate judiciary. *Barber v. M. F. A. Milling Co.*, 536 S.W.2d 208, 211[13] (Mo.App.1976). See also, *Corning Bank v. Hager*, 560 S.W.2d 892, 894 (Mo.App.1978). Defendants' sixth point is denied.

Defendants' seventh point relied on reads: "The judgment of the trial court wherein it sought to reform the March 14, 1973, deed from the Harrymans to the Mays is unenforceable for the reason that the description of the land in the reformed deed is so vague and indefinite that no valid judgment can be entered and enforced." Even plaintiffs concede the merit of this point. The relevant portion of the trial court's order states: "... That the deed from Lavern May and Margie May to Joe T. Sullivan and Anne E. Sullivan be and is hereby reformed to establish that the east boundary of the 16½-foot strip is the division fence, which begins at the northeast corner of the 40-acre tract of land owned by Joe T. Sullivan and Anne E. Sullivan, runs along the existing fence line and then where the fence line has been removed the boundary line runs north from the existing fence to the county road...."

Decrees affecting title to real estate should describe the land in question with certainty. *Allen v. Smith*, 375 S.W.2d 874, 882[19] (Mo.App.1964). Clearly, the disputed tract of land is incapable of being located solely by reference to the language to be included in the reformed deed. The description is dependent upon such nonpermanent markers as "the division fence" and "the existing fence line," which are not of the sort to withstand the ravages of time and which would support a later conveyance of the property by the plaintiffs. *Tillman v. Hutcherson*, 348 Mo. 473, 483, 154 S.W.2d 104, 110[14] (1941). As the description of the land involved is insufficient, this portion of the trial court's judgment must be reversed and remanded for further evidence on the question and a survey if necessary. *Tillman*, 348 Mo. 473, 154 S.W.2d at 110[16]; *Mann v. Mann*, 193 S.W.2d 492, 494[2] (Mo.1946).

Accordingly, the judgment is affirmed in part, and in part reversed and remanded with directions.

GREENE, P. J., and FLANIGAN, J., concur.