**DENT COUNTY BANK, Appellant,**

v.

**Emmett REARY, Nancy Reary, Dean Jones and Mary Jones, Respondents.**

**No. 13281.**

Missouri Court of Appeals,
Southern District,
Division Three.

July 24, 1984.

James B. Crenshaw, Centerville, for appellant.

No appearance for respondent Emmett Reary.

Ronald D. White, Joseph W. Rigler, Rolla, for respondents Nancy Reary, Dean Jones and Mary Jones.

CROW, Presiding Judge.

Dent County Bank ("appellant") appeals from a judgment denying its prayer for reformation of a warranty deed and a deed of trust, insisting there was no substantial evidence to support the trial court's decision. That contention—appellant's sole point—necessitates a summary of the evidence.

Dean Jones ("Dean") and his wife, Mary, own several hundred acres of land in Dent County. They are parents of five children including a daughter, Nancy, who, at the times pertinent here, was the wife of Emmett Reary ("Emmett").

Prior to the events in issue, Dean, motivated by love and affection for his children, told them he would give each one some acreage on which to build a home. Nancy recalled Dean saying he would give each child 10 acres.

In early 1979, Nancy informed her parents that she and Emmett wanted some land for a home. Nancy and Emmett both testified that Dean and Mary agreed to give them 10 acres. Emmett, like Dean, was aware that a square tract, each side measuring 660 feet, contains 10 acres.

Nancy and Emmett selected a building site in the southwest part of a tract owned by Dean and Mary. Nancy marked the location by tying orange yarn around three trees, 5 or 6 feet above the ground.

Thereafter, Dean, Mary, Nancy and Emmett went to the site, and Dean undertook to measure 10 acres, beginning at the southwest corner of his property. Dean's testimony, footnoted below,[1] describes what occurred.

---

1. Dean testified:

"Q. Now you decided to step that area off so that you could give her a deed to that property didn't you?
A. I was giving them a deed for 10 acres out of the corner of the 40, which would be 660 feet square, that's true, uh-huh. And then we went an extra 100 feet, which made it 760 feet east and west.
Q. You did some stepping off out there didn't you?
A. Yeah, we walked this south line. 660 steps and thought might not be quite enough to get the house on it so we went another—
MR. WHITE: 660 steps?
A. No, 660 feet. 660 feet.

Q. You went down to the southwest corner of that tract didn't you, on the south line?
A. Uh-huh, southwest, yes.
Q. Correct?
A. True.
Q. And then you walked to the east from there what you thought was 660 feet, correct?
A. True.
Q. And then you looked up to the north didn't you?
A. Yeah.
Q. In the area where this rag was tied.
A. Yeah.
Q. And it appeared to you that you would need another 100 feet to the east so you would be certain that that area where the rag was tied was on the property didn't you?

Nancy's testimony, also footnoted,[2] parallels Dean's.

As shown by that testimony, Dean, after walking east from his southwest corner a distance that he believed to be 660 feet, then stepping off an additional 100 feet east of that, decided to give Nancy and Emmett a rectangular tract measuring 760 feet east-west by 660 feet north-south.

Dean requested an attorney to prepare a warranty deed describing a tract beginning at the southwest corner of Dean's and Mary's property, thence east 760 feet along the south property line, thence north 660 feet, thence west 760 feet to the west property line, thence south along the west line 660 feet to the point of beginning. The deed was prepared accordingly, naming Dean and Mary as grantors, and Emmett and Nancy as grantees. Dean and Mary signed it April 26, 1979, and it was recorded the same day.

Emmett, who had previously done business with appellant, arranged to borrow funds from appellant to pay for the home he and Nancy intended to build. Emmett took the warranty deed to appellant, showing it to Douglas Wisdom, appellant's executive vice president.

On June 30, 1979, appellant loaned Emmett and Nancy $35,000. Emmett and Nancy signed a promissory note in that amount, secured by a deed of trust on the land deeded them by Dean and Mary. The description of the land in the deed of trust was copied from the warranty deed. The $35,000, together with an additional $12,-000 borrowed later, was used by Emmett and Nancy to build the home. It was constructed on the site they had selected, or west thereof.

Nancy and Emmett occupied the home some time late in 1979. Marital problems thereafter developed, and as a result, Emmett departed the following spring.

Neither Emmett nor Nancy paid anything to appellant against the $47,000 debt. Consequently, appellant undertook foreclosure under the deed of trust. At that juncture, in January, 1981, appellant had the tract surveyed, and the surveyor discovered that the house, which faces east, sits astraddle the east boundary of the tract described in the two conveyances. The southwest corner of the house is 13.1 feet west of the property line; the southeast corner of the house is 11.4 feet east of the line. A porch on the front of the house sits entirely on land owned by Dean and Mary. A rear porch sits on land owned by Emmett and Nancy. There is no problem as to the north and south boundaries; the house is comfortably distant from each.

Appellant sued Emmett, Nancy, Dean and Mary, seeking reformation of the warranty deed and the deed of trust so that the east-west dimension of the subject tract would be 880 feet, rather than 760 feet. That is, appellant prayed for a decree reforming the description so that the south property line, beginning at the southwest corner of the described tract, would extend east 880 feet instead of 760 feet, and the north property line would likewise extend

A. Well I suppose. Now this rag business, I'm not too much on it but they had some rags tied around there, but now which tree it is I wouldn't know.

Q. But you decided after stepping off what you thought was 660 feet to give them an extra 100 feet?

A. True.

Q. And that was so they would have the building site that they wanted, correct?

A. Yeah."

2. Nancy testified:

"Q. Did he pace off what he thought to be about 660 feet?

A. Yes.

Q. All right. And after pacing that off, did he say anything to you? 'Is that enough, Nancy,' or, 'Do you need more, Nancy,' or what did he say?

A. Well, when we got up to 660 feet and he looked up through the woods where I guess someone was standing—I don't remember—and he said, 'That should get the house,' but then he said, 'To make sure, we better give you another hundred feet.'

Q. Okay. So, that would be another hundred feet to the east?

A. Yes, which made it 760.

Q. All right. And it appeared to all of you that the 760 feet would be east of the yarn tied around the trees?

A. Yes."

east 880 feet from the west boundary. Appellant sought no change in the length of the east or west boundary lines. Also included in appellant's petition were counts seeking judgment against Emmett and Nancy for the amounts due on the sums loaned them to build the home, and an unpaid balance on another note unrelated to this dispute.

The trial court entered judgment against Emmett and Nancy for the money owed by them to appellant, but denied appellant's prayer for reformation of the warranty deed and the deed of trust. It is the latter segment of the judgment, denying reformation, that appellant attacks on this appeal.

In reaching its decision, the trial court found as a fact that the warranty deed represented the true intent of Dean and Mary with regard to the land they agreed to transfer to Emmett and Nancy, and the legal description in the warranty deed was the same as the oral description decided upon among the four of them.

The trial court held, as a conclusion of law, that the legal description in the warranty deed properly reflected the agreement of the four parties thereto, and there was no mistake by any of them regarding the land described in that instrument. Consequently, ruled the court, appellant was not entitled to reformation of the warranty deed. That being so, any issue as to reformation of the deed of trust was rendered moot.

Seeking reversal, appellant states its point thusly:

"The trial court erred in concluding reformation of the ... warranty deed, and the deed of trust did not lie in this case, because there was no substantial evidence to support the trial court's conclusion that ... the ... warranty deed correctly reflected the agreement of the parties as to the description of the property intended to be conveyed, in that the evidence clearly and convincingly showed that all parties to the deed intended the legal description to encompass the home site selected by Nancy ..., and the legal

description in ... [the warranty deed] failed to do so."

Appellant does not contend that Dean or Mary made any representations to it that the tract described in the warranty deed included the building site. Indeed, Wisdom, who, on appellant's behalf, handled the loan transactions with Emmett and Nancy, admitted he never talked to Dean or Mary, nor did he go to the site either before, or during, the time the home was under construction.

Appellant's contention is simply that the warranty deed and the deed of trust should be reformed because the tract described in those instruments, when correctly staked out on the ground, does not include the area chosen by Nancy and Emmett for their home. Appellant argues that the four parties to the warranty deed intended that ownership of the building site be transferred from Dean and Mary to Nancy and Emmett, and were mutually mistaken in believing that the site was included in the land described in that instrument.

■ The scope of our review in this court-tried case is established by *Murphy v. Carron*, 536 S.W.2d 30, 32[1] (Mo. banc 1976). The judgment of the trial court will be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law.

■ We hold the evidence sufficient to support the trial court's finding that the legal description in the warranty deed was the same as the oral description decided upon between Dean, Mary, Emmett and Nancy. Emmett testified he was aware that the tract he and Nancy were receiving measured 760 feet by 660 feet. Nancy was likewise aware of that, as she was present when Dean paced off the 760 feet along the south boundary of the tract. Dean, who originally said he and Mary would deed Emmett and Nancy 10 acres, decided, after pacing off 660 feet along the south boundary, to go another 100 feet. Mary was

present when the 760 foot measurement was made.

The trial court was thus confronted with a unique factual situation in which all parties to the warranty deed knew the starting point and the exact dimensions of the land being conveyed, and all four assumed—incorrectly, as it turned out—that the building site lay somewhere within the boundaries of the tract described in the deed.

■ Appellant, citing *Tripp v. Harryman*, 613 S.W.2d 943 (Mo.App.1981), maintains that where parties to a deed agree upon the land to be conveyed, and the deed does not describe the land intended by the parties, there is a mutual mistake in the deed which the courts will correct by reformation.

We find no fault with that proposition as an abstract statement of law. Appellant has failed to persuade us, however, that it applies here.

The mistake in the instant case was not in the description set out in the warranty deed. The mistake was in assuming that the building site lay west of the east boundary of the land described therein.

The description did not describe less land than Dean and Mary intended to convey. Indeed, it described an acre and a half more than the 10 acres they originally said they would give. Moreover, there is no evidence whatsoever to support appellant's prayer that the east-west dimension of the property be increased, by reformation, to 880 feet. Such relief would increase the size of Emmett's and Nancy's tract by 1.8 acres, giving them 13.3 acres. That would be 16 per cent more land than the warranty deed calls for, and 33 per cent more than Dean and Mary originally intended to give. No one testified that Emmett and Nancy intended to have a 100 foot front yard east of their home, which would be the result if appellant obtained the relief sought. In short, there is no evidentiary support for a decree increasing the east-west dimension of the subject tract to 880 feet, as prayed for by appellant.

■ We believe the instant case calls for application of the principle that equity will not interfere where parties make contracts or other dispositions as to boundary lines on the basis of mistaken assumptions, uncertainties or contingencies, well knowing at the time that they might be mistaken, especially where the precise location of boundary lines may readily be ascertained by a survey. *Croy v. Zalma Reorganized School District R–V*, 434 S.W.2d 517, 521[6] (Mo.1968). Here, the parties to the warranty deed erroneously assumed that the building site lay within the boundaries described in that instrument. The location of the property lines could have been readily ascertained by a survey. Had one been made before the warranty deed was drawn, the problem in this case would never have arisen.

Though not factually identical, the instant case is analogous to *Heinze v. Hobson*, 622 S.W.2d 17 (Mo.App.1981). There, reformation was denied where the deed conveyed the land that the parties intended to convey based on their visual inspection and their limited measurements. The trial court's finding that there was no mutual mistake was upheld.

■ Emmett, Nancy, Dean and Mary were in agreement as to the dimensions and the starting point of the tract being conveyed. The existing predicament resulted from a misconception by all of them that the building site was closer to the west boundary of that tract than it turned out to be. If the instrument as executed expresses the agreement of the parties, it is no ground for reformation that in arriving at such agreement all parties labored under the same misconception. 4 Tiffany, The Law of Real Property § 985 (3d ed. 1975).

Having determined that the trial court's factual findings are supported by substantial evidence and not contrary to the weight of the evidence, and having detected no error of law, we reject appellant's thesis.

Judgment affirmed.

GREENE, C.J., and HOGAN, MAUS and PREWITT, JJ., concur.